IMPERIAL CHEMICAL MANUF'G CO. v. STEIN et al.

(Circuit Court, S. D. New York. August 7, 1895.)

1. INFRINGEMENT OF PATENTS—ACQUIESCENCE AND LACHES.

A complainant who purchased his patent a short time before filing the bill will not be refused an injunction, on the ground of acquiescence or laches, where the only evidence thereof is that sales of the infringing article were made for several years by defendants' assignor, and that no objection was made by complainant's assignor.

**2. SAME—HAIR-DYEING PROCESS AND COMPOUND.**
The De Barbaran patent, No. 305,057, for a process and compound for dyeing hair, *held* valid and infringed.

This was a suit in equity by the Imperial Chemical Manufacturing Company against Joachim Stein and others for injunction and accounting for alleged infringement of a patent relating to the dyeing of hair.

Briesen & Knauth, for complainant.
Hays & Greenbaum, for defendants.

TOWNSEND, District Judge. Bill for injunction and accounting, alleging infringement of patent No. 305,057, granted September 16, 1884, to C. Albert Conti de Barbaran, and assigned to complainant. The two claims of the patent cover respectively a process for dyeing hair, and the compound or dye bath used therefor. Said claims are as follows:

"(1) Coloring human hair or the hair or fur of animals by treating the said hair or fur first with an ammoniacal solution of nickel, and then with pyrogallic acid, substantially as hereinbefore described and set forth,

"(2) The dye bath, consisting of an ammoniacal solution of nickel and pyrogallic acid, substantially as described."

The defenses are denial of infringement, acquiescence, lack of patentable novelty.

The patent states, as an essential element of the patented process, that the liquids used therein shall be successively applied in a given manner. The defendants have sold a hair dye put up in three separate bottles, one containing sulphate or nitrate of nickel, one a solution of pyrogallic acid in water, and one a solution of nitrate of silver. The circular accompanying said bottles shows that defendants apply said dye in the manner specified in the patent, and sell it to others to be so applied. Such sales constitute contributory infringement. Chemical Works v. Hecker, 2 Ban. & A. 351, Fed. Cas. No. 12,133; Boyd v. Cherry, 50 Fed. 279.

The evidence as to acquiescence is as follows: For several years, prior to 1891, defendants' assignor advertised and sold said infringing dye in the same form and under the same name as that now used by defendants, and no claim of infringement was ever made until after the defendants had bought out said business. Counsel for defendants claims that these facts show abandonment of the patent and acquiescence in its public use. There would be much force in this argument if it appeared that complainant was a party or privy to such laches. But the evidence shows that it did not acquire title to the patent until May 1, 1891, and that this bill was filed June 24, 1891. It is not now necessary to determine either under what circumstances the assignee of such a right may be chargeable with the consequences of the laches of his assignor, nor the effect of the alleged acquiescence of complainant's assignor upon the question of damages. It is well settled that abandonment or long delay to sue, with full knowledge of infringement, may constitute such laches as to be equivalent to bad faith, and may operate in analogy to an estoppel, so far as equitable relief is sought. Prince's Metallic Paint

Co. v. Prince Manuf'g Co., 6 C. C. A. 647, 57 Fed. 938, 944; Menendez v. Holt, 128 U. S. 514, 524, 9 Sup. Ct. 143.    But there is no evidence in this case of nonuser, surrender to the public, or knowledge of infringement, except such as may be inferred from the fact of said sales without any protest on the part of complainant's assignor.    In these circumstances, the principle of laches should not be so applied as to deprive complainant of the right to an injunction.    A trespasser cannot acquire a legal right to the continuance in his wrongful acts without affirmative proof of some such act or omission to act, on the part of him whose property rights are invaded, as would make it inequitable to assert such rights.    The inequity of permitting the enforcement of such claim is founded on knowledge of an opportunity to enforce rights on the one hand, and on changes in the conditions or relations of the adverse party on the other.    Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873.    "Mere delay in seeking relief, where there is no estoppel, will not in general prevent an injunction, though it may preclude the plaintiff from the right to an accounting for past profits."    Edison Electric Light Co. v. Equitable Life Assur. Soc., 55 Fed. 480; New York Grape Sugar Co. v. Buffalo Grape Sugar Co., 18 Fed. 638, 646; Walk. Pat. § 596; Pom. Eq. Jur. § 817; Kittle v. Hall, 29 Fed. 508.

The disclaimer of the patent and the admissions of complainant's witnesses show that the claims must be strictly limited to the successively combined use of an ammoniated solution of some salt of nickel, and a mordant of pyrogallic acid, or its equivalent.    Counsel for defendants claim that, as thus limited, the patent is void for lack of patentable novelty, and, in support of said claim, relies especially upon the affidavit of Paul De Spoote and the testimony of Francis F. Marshal, husband of defendants' assignor.    Marshal's testimony fails to prove that the circulars containing directions for the use of the dye similar to those of the patented process were published prior to the application for the patent in suit.    It is true he says the method of using an earlier and different dye was the same as that used with the infringing dye, and that the patented preparation and process were very well known to dyers, but he produces no proof of the first statement, and admits he has no personal knowledge as to the second.    Paul De Spoote, a voluntary witness who has been notified that he was infringing the patent, does not show that either he or the persons and publications referred to by him ever used or disclosed the patented process.    His statements upon this point, like that of several other witnesses, merely show that salts of nickel had been used as a hair dye.    The distinction between the prior art and the essence of the invention of the patent is shown by the fact that, while ammoniated solutions of nickel salts have been mixed with various other substances in the manufacture of hair dyes, the patentee was the first to disclose "the use of two separate solutions, each of which contained ingredients essential to the carrying out of the process described, and each of which is used separately, instead of having been previously mixed."    I do not find in the record any trustworthy evidence of prior public use of sufficient weight to defeat what appears to be, in a small way, a meritorious and use-

ful invention. The conclusions reached are confirmed by the result of certain experiments testified to by complainant's expert, Dr. Wyatt, in the light of the evidence of defendant's witnesses Kraus and Stein. These witnesses swore that they had used practically the mixture of nickel and pyrogallic acid of the patent as a dye, and described its preparation and use. Upon rebuttal, Dr. Wyatt took certain samples of hair, and treated one portion with such mixture, and another portion by the successive processes of the patent in suit. He afterwards washed these samples. The result was that in the former case the color was washed out, while in the latter it remained. In the one case the hair was merely painted. In the other, it was dyed. I conclude from this evidence either that these witnesses to anticipation are mistaken as to their former alleged uses, or that the results therefrom were impracticable and unsatisfactory as compared with those obtained by following the process described in the patent in suit.

Let a decree be entered for an injunction, but not for costs or for an accounting.