## DE SIMONE v. R. H. MACY & CO., Inc.

No. 264.

Circuit Court of Appeals, Second Circuit.
April 4, 1932.

Swan, Circuit Judge, dissenting.

Robert S. Allyn, of New York City (Henry J. Lucke, solicitor, and Edward S. Higgins, both of New York City, of counsel), for appellant.

H. Dorsey Spencer, of New York City (Cyril A. Soans, of Chicago, Ill., of counsel), for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This suit is for infringement of patent No. 1,476,804, a pay roll machine for which letters patent were granted December 11, 1923. The appellee is a user of the machine, and the defense is being actually conducted by the manufacturer.

Claims 4, 5, 9, 26, 28, 33, 37, 40, 46, 49, 50, 74, and 77 are in issue, and were found by the court to be an aggregation of old elements and the patent invalid. The machine is used for denominating pay rolls; that is, determining the number of units of the various denominations of currency required for a pay roll as represented by the pay slips of the employees. The machine has a keyboard of the decimal type. The keys are depressed, in accordance with the amount represented by a pay slip, and a series of connections directly actuated by these keys analyze the total amounts into the denominations required to make up such pay roll. The key-actuated mechanism sets up a series of denominational indicators, the number and character of currency units thus analyzed, and the subsequent movement of a crank on the machine transfers these indications to a series of registers. The registers comprise a set of counters, and these record the items previously analyzed by the keys. The machine includes synthesizing mechanism which is operated in conjunction with the counters for the purpose of adding up the total money value represented by the units registered by the counters. It has a canceling mechanism which permits a cor-

rection of error, if one be made, and this is referred to as a pre-set. If error is made by striking a wrong key, it can be corrected by depressing the pre-set or error key, before the item is counted into the machine. The invention consists in providing a compact mechanism including the decimal board, analysis, and adding mechanism and a lever for manual operation of such a character that each item of the pay roll can be set up by simply punching the proper keys, one key for each digit, and the mechanism will automatically register the item into a minimum number of coins or bills according to a predetermined monetary system, and will register the totals of the respective coins and a total money value when the operating lever is subsequently actuated. For instance, 6 cents is recorded as one nickel and one cent; 46 cents appears in the totals as one quarter, two dimes, and one cent; $7 is indicated as one five and one two, all of which is done without computation on the part of the operator. By this mechanism, every item is broken up or analyzed into the minimum number of coins in order to eliminate errors. When all the items have been registered, the counters will show the fewest number of standard units of currency required to pay off all the employees, and the total value of the pay roll. The registers may be reset after the pay roll is thus completed.

The decimal keyboard is so constructed that the keys are arranged in columns or banks with as many columns as are required for the maximum anticipated pay items, for instance, if four columns, there is one column for the tens of dollars, one for dollars, one for dimes, and one for cents. The keys in each column have the digits from one to nine. This provides simplicity in the keyboard. The mechanism is so arranged that when an item, as 35 cents, is set on the keys, the quarter and dime digits are actuated rather than the dime and nickel digits. The machine thus provides for a separation of a sum into its standard component elements. The mechanism is arranged for counting or adding, and includes a series of number-bearing wheels or discs with rachet connectors which are resettable so as to make it possible to turn the wheels back to zero from any position. There is a totalizer which adds all the pay cards to indicate the total money value in the selected standard.

Prior patents in the art are claimed to be anticipations. Of these, the Griffin had been issued in 1910, and the Ovaitt, Foster, and White applications were copending with the application in suit, and all were cited against it. Griffin, No. 979,391, shows two keyboard machines, one requiring 99 keys and the other a special zero key. In operation it becomes necessary to depress two separate keys simultaneously for some items. It has not a pre-set key, errors may not be corrected, and it has no total money adder. Foster, No. 1,128,594, was an attachment for a money changer. It does not disclose minimum denominations, and is not a decimal type keyboard. It has no totalizer or pre-set key by which errors may be corrected. The Ovaitt, No. 1,464,683, shows an adder of the Burroughs type. It has not the cancellation mechanism, and it does not register the minimum number of coins or bills as the patent in suit. If, for instance, it was registering 25 cents, it would do so by registering two dimes and one nickel; 35 cents, one quarter and two nickels; 45 cents, one quarter, one dime, and two nickels. The patent in suit improves upon this by registering the minimum number of currency units. It is not shown that the Ovaitt machine could be altered to embody the essential minimum denominational device of the patent in suit. It is very significant also that Ovaitt copied the machine which is charged in this suit to be an infringement.

A machine, Exhibit C, referred to as a "cashier" or "White Money Change Maker," is offered as being in anticipation. It had a back plate bearing dates of the patents as issued in 1916. It had an interlock which was not on the machine as early as 1913, when it was claimed to have been made. The testimony tending to establish the prior existence of this type of machine is very unsatisfactory. It was supposed to eject silver in dollars from one to four. It did not analyze an item of $3 into a $2 and a $1 unit, for instance, and it could not break down $4 into $2 units as is done by the patent in suit and the infringing machine.

It was necessary to change the selecting mechanism to accomplish the ability of the patent in suit. Such a device could not be used to invalidate a patent, for it does not establish beyond a reasonable doubt a prior use of the mechanism now used in the patented machine. The Barbed Wire Patent, 143 U. S. 275, 12 S. Ct. 443, 36 L. Ed. 154; Cantrell v. Wallick, 117 U. S. 689, 6 S. Ct. 970, 29 L. Ed. 1017. Because it was an incomplete or inoperative machine, it will not anticipate this patent. Diamond Patent Co. v. S. E. Carr Co., 217 F. 400 (C. C. A. 9).

As shown by Exhibit 5, the patentee here conceived the idea of the pay roll machine as early as 1913, making his wooden model of the cancellation or whiffletree action before April 1, 1913. He distributed a circular outlining his pay roll machine in October, 1913. He filed his application July 3, 1914, thus giving the date of his invention. Moreover, we think it amounted to invention to accomplish what this inventor did, giving due credit to the "White Change Maker." The counters were not put on the so-called "White" machine until long after this patentee's circular was published in October, 1913. Counters had been used on other machines. Mr. Mann testified that trouble was experienced with this so-called White machine, for the "ejectors * * * duck down." This would cause error which would be fatal to the use of the machine, as the machine must calculate correctly at all times. The register or "Coinometer" for the White cashier machine was not completed until August, 1914, and this patentee had his machine built in the fall of 1913. It required inventive thought on the part of this patentee to combine, as he did, all the elements which were used in other machines. The invention consists primarily in building a machine with the conception that it was desirable to simultaneously set up the items of the pay roll and accurately determine the total money to be drawn from the bank in the minimum number of coins and bills of each denomination necessary to pay off each employee, and then select and combine the various mechanisms required to produce that result. Miehle Printing Press Co. v. Whitlock Printing Press Co., 223 F. 647 (C. C. A. 2); Railroad Supply Co. v. Hart Steel Co., 222 F. 261 (C. C. A. 7). The altering and combining of the previous machines necessary to accomplish the result was patentable. The result was more than a mere aggregation, and has resulted in a real contribution to the art. Diamond Rubber Co. v. Consolidated Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527; Webster Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177; Sachs v. Hartford, 47 F.(2d) 743 (C. C. A. 2). Even though there was a prior successfully operated bank cashier machine with canceling mechanism, to add registers which record the minimum number of coins or bills and the total money value of a pay roll with accuracy was an important step forward and constituted a patentable invention.

While pay roll machines had been previously suggested, Ovaitt, in all his efforts, did not accomplish what he now copies from the appellant's machine. He did not register the minimum number of coins required. The patent for the later White machine was applied for September 30, 1915, and the patentee then swore that the invention had not been in public use or on sale for two years prior thereto, nor did he in 1915 say that he disclosed a pay roll machine.

An analysis of the claims in suit shows that the appellee's machine embodies the combination of all such claims. The machine of both parties performed the same functions in the same identical way. There is, to be sure, a difference in the construction of the mechanical details, but the features of these are not included in the claims in issue. There is a plurality of keys corresponding to monetary values and means for positively limiting the extent of the manipulation of the keys, and they are so constructed that they have a positive limiting action. Both have the selective means for controlling denominating registers. This is regulated by the keys. This action operates the respective registers to indicate the particular number of the corresponding denomination that constitutes the minimum currency units of equivalent total monetary values. Both have the means for registering the total value of the various items set up on the machine. Thus there is found in appellee's machine a combination which performs the same functions and obtains the same result as is accomplished by the appellant's device.

It is argued that the resettable key which eliminates an item erroneously registered is not referred to in the claims. This feature of resettable register is regarded as important, and is used to distinguish between the disclosure of the Ovaitt earlier machine and the patent application, and the appellant argues that the provision of a resettable register to be used in connection with the payroll machine is sufficient to save the claims from the charge of aggregation. The resettable registers are implied in claims 26, 28, and 74, for the total money value register would not normally register the total of the denominational register unless the registers were reset to zero before starting to set up a given pay roll. Without this feature, the operator would have to perform a mental calculation of subtraction to get the correct answer, and this would defeat the purpose of the pay roll machine, which must be automatic. Both appellee's and appellant's machines are automatic.

■ A defense of laches is interposed. The appellee's machine was purchased in 1927 from Ovaitt, and this suit was commenced within a year. While similar machines were made by the International Money Machine Company, which had gone out of business, no new machines which infringed had been made until 1927, when Mr. Ovaitt purchased the tools from the defunct company. These circumstances excused appellant from embarking upon expensive patent litigation. Laches in bringing the suit is no bar in testing the validity of the appellant's patent. Baltzley v. Spengler, 262 F. 423 (C. C. A. 2); Hubbard v. Manhattan Co., 87 F. 51 (C. C. A. 2).

Decree reversed.

SWAN, Circuit Judge, dissents without opinion.