## CATERPILLAR TRACTOR CO. v. INTER-NATIONAL HARVESTER CO.

District Court, D. New Jersey.
March 9, 1940.

McCarter & English, Conover English, and William H. Campbell, Jr. (substituted atty.), all of Newark, N. J. (Charles M. Fryer and A. C. Aurich, both of San Francisco, Cal., of counsel), for plaintiff.

Lindabury, Depue & Faulks, and Josiah Stryker, all of Newark, N. J. (George L. Wilkinson and William S. Elliott, both of Chicago, Ill., of counsel), for defendant.

CLARK, District Judge.

There is an air of disturbing unreality about the case at bar. Plaintiff and defendant are rival tractor manufacturers. They have since January, 1931, disagreed over the infringement of certain of plaintiff's patents by certain of defendant's constructions. The dispute was and is genuine, but the same cannot be said for the manner of its litigation.

Fortuitously and in the spring of 1931, Reinharts, Inc., a small Nevada dealer, sold two tractors of defendant's manufacture. It had never done so before, though such tractors (conveniently representative we may add—one being track type, the other wheel type) had long been on the market. Plaintiff did not allow the grass to grow under this act of infringement. It brought prompt suit against Reinharts, Inc., in the District of Nevada, and despite a very thorough defense, obtained a decree in its favor from the District Court which was sustained on appeal. See Reinharts, Inc., v. Caterpillar Tractor Co., 9 Cir., 85 F.2d 628, certiorari denied, 302 U.S. 694, 58 S.Ct. 13, 82 L.Ed. 536. The proofs leave little or no room for doubt that the defense of that suit was conducted and controlled by the present defendant through the firm of attorneys now representing it at bar, but then retained by it to represent Reinharts, Inc. The present defendant was, to be sure, originally made a party defendant in the same suit, but

chose to have plaintiff's bill dismissed as to it for improper venue—the District of Nevada being, as it chanced, one of the two where it could not be brought into the federal courts against its will. From then on illusion was matched against illusion. Plaintiff, insisting on an adjudication in Nevada rather than immediate and forthright relief against defendant, stressed its somewhat inconsequential grievance against Reinharts, Inc.; defendant, in an effort to escape such an adjudication, feigned complete ignorance of its participation in the dealer's defense.

This artificial posture of litigation introduces the question at bar. Plaintiff, having disposed of Reinharts, Inc., and its two tractors, now turns to defendant and its thousands, invoking by appropriate motion the doctrine of res judicata. In opposition, defendant does not deny the adequacy of its interest in the Nevada litigation, nor does it seriously contest the fact (above postulated) of its complete control of the defense therein. It points rather to its strategem of pretended ignorance. Technically it relies upon the proposition that to render one not a party of record subject to the outcome of a suit, not only must he be a de facto party in the sense of having an interest in and control over the proceedings, but his participation in them must also be "open and avowed to the knowledge of the opposing party." Thus (the argument runs) a manufacturer able and willing to appear in the United States Courts disguised as one of its customers becomes, by that rather devious token, entitled to utilize the services of United States judges in answering, but not determining, arduous questions of its vulnerability to claims of patent infringement. In our estimation, however, that need not be the case, and never can be in the circumstance at bar.

The "open and avowed" rule is announced by the highest authority, Soufront v. La Compagnie Des Sucreries, 217 U.S. 475, 30 S.Ct. 608, 54 L.Ed. 846, and thoroughly entrenched in the texts. See 1 Freeman, Law of Judgments, §§ 432, 433; 2 Black on Judgments, § 540; Van Fleet, Res Judicata, §§ 523, 525; Bigelow on Estoppel, p. 115; Herman on Estoppel, p. 157; and, also, 1 George Washington Law Review 415 (note); but cf. Bower, Res Judicata, §§ 197–208. Upon analysis, however, the decisions which enforce the rule fall into two distinct categories. In the first (which comprises most of the cases) res judicata is pleaded by one who has been a successful undisclosed but de facto party to the former litigation. See Westinghouse Electric & Mfg. Co. v. Jefferson Electric, etc., Co., C.C., 128 F. 751; Jefferson Electric, etc., Co. v. Westinghouse Electric & Mfg. Co., 3 Cir., 134 F. 392; Id., 3 Cir., 139 F. 385; Cramer v. Singer Mfg. Co., 9 Cir., 93 F. 636. There are cogent grounds for preventing him from capitalizing upon the former judgment in his dummy's favor. One is the desirability of removing any advantage from secret defenses. For if the secret is kept, the deceived adversary, later proceeding against the deceiver, has no choice but to retry identical issues against a forewarned opponent. Another is well expressed by a writer in the Columbia Law Review:

"* * * The reason advanced for the 'open and avowed' qualification in the case where a secret defendant in a previous suit seeks to invoke the doctrine of res judicata in a later action, is that to allow him to do so would be to force a plaintiff to prosecute to the utmost suits which, for personal or pecuniary reasons, he wishes to let slide. Should plaintiff institute a suit and after that suit is commenced discover that his opponent is judgment-proof, it is hard to require him to throw good money and time after bad by continuing his prosecution on the mere chance that a responsible party, whom he might attempt to sue in another action on the same issues, is a secret defendant in this suit. This reason has not gone unchallenged, but its practical fairness as far as plaintiffs are concerned, coupled with arguments of public policy, seem to ensure its validity. * * *

"It seems to be against public policy to clutter up the calendar with mere token suits, suits whose further prosecution represents economic waste not only to the plaintiff, but also to the state." 39 Columbia Law Review 1251, 1252.

See, also, Von Moschizisker, Res Judicata, 38 Yale Law Journal 299, 302. So the interest of the state in seeing an end to litigation is enhanced by abolishing the greater evil (fruitless suits) at the expense of permitting the lesser (relitigation of secretly contested issues). In the second category of cases—where, as here, res judicata is pleaded against an unsuccessful secret party—there is no rational explanation for the rule. The pleader, by hypothesis, has not been deceived by the

secrecy. Nor, by hypothesis, can there be any risk of encouraging the needlessly extensive prosecution or defense of lawsuits. Public policy, on the other hand, commands that the unsuccessful party, open and avowed or otherwise, who has had his day in court shall not vex his adversary twice with the same cause, and burden the courts with the relitigation of adjudicated issues. See 2 Freeman, Law of Judgments, above cited, § 626.

The application of the open and avowed rule to the first, but not the second, category does, of course, conflict with the orthodox concept of mutuality of estoppel by judgment. That concept, however, is not absolute. It has yielded to numerous exceptions in other fields of the law, such as specific performance, Walsh, Equity, pp. 341–356, and see Ames, Mutuality in Specific Performance, 3 Columbia Law Review 1, and consideration, 1 Williston on Contracts, pp. 504, 505. The same is true of the field of the case at bar. See Cox, Res Judicata; Privity and Mutuality in the Doctrine of Res Judicata, 35 Yale Law Journal 607 (comment); The Requirement of Mutuality in Estoppel By Judgment, 29 Illinois Law Review 93 (comment); 82 University of Pennsylvania Law Review 871 (note). Those exceptions are dictated by policy, and so it must be conceded that mutuality is the servant, not the master, of the maxim "interest rei publicae ut sit finis litium." Any other view would sacrifice accuracy in substance for mere symmetry in form. As Jeremy Bentham has warned: "If the rule itself is a curious one, the reason given for it is still more so:—'Nobody can take benefit by a verdict, who had not been prejudiced by it, had it gone contrary': a maxim which one would suppose to have found its way from the gaming-table to the bench. If a party be benefited by one throw of the dice he will, if the rules of fair play are observed, be prejudiced by another: but that the consequence should hold when applied to justice is not equally clear." 7 Bentham's Works (Bowring's Ed. 1843) 171.

We think, therefore, that policy must prevail over mutuality in our circumstance, and that the open and avowed rule does not apply. This is no great departure from precedent. Of the cases in the second category cited by counsel, only one holds that lack of avowal and/or knowledge alone affords a basis for disregarding the doctrine of res judicata, Rowe v. Kidd, 6 Cir., 259 F. 127, and that case did not involve the somewhat peculiar situation of patent suits against manufacturer and dealer. See Kessler v. Eldred, 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065; General Chemical Co. v. Standard, etc., Acid Works, 4 Cir., 101 F.2d 178. The rest contain other grounds for decision, Lane v. Welds, 6 Cir., 99 F. 286, Stromberg Motor. Devices Co. v. Zenith Carburetor Co., D. C., 220 F. 154, or merely hold that the rule is satisfied under the circumstances, Elliot Co. v. Roto Co., 2 Cir., 242 F. 941. Our own hasty research discloses but one patent case squarely opposed to our conclusion, Steinfur Patents Corp. v. J. Meyerson, Inc., D.C., 56 F.2d 372, 383. But that decision is more than counterbalanced by the recent case of Universal Oil Products Co. v. Winkler-Koch Engineering Co., D. C., 27 F.Supp. 161, which unlike its predecessors gives heed to fundamental policy. The law review writer above quoted says of it: "Furthermore, the court points out, the desirability of limiting litigation, the real reason for the existence of res judicata, should take precedence over other determinative criteria of a less basic nature. This seems to have special relevance in these days of overcrowded dockets. It is supported by reason and some authority. * * * The present case, it is suggested, represents a step in the right direction, especially in the sphere of procedure, where there are all too many rules with all too little reason." 39 Columbia Law Review 1251, 1253, 1254.

With the removal of the open and avowed rule from the cause, the factual issue of whether that rule has been complied with becomes irrelevant. We may say that on the proofs submitted we cannot attribute to the plaintiff the naivete requisite to remain in ignorance of defendant's participation in the Reinharts, Inc., suit. Plaintiff, indeed, was so well informed that it prevailed upon the learned trial judge to make a finding that defendant's defense of Reinharts, Inc., was known to the plaintiff. The very fact that the finding was submitted is practically indisputable evidence of plaintiff's knowledge. And that knowledge would seem, irrespective of avowal, studied or inadvertent, sufficient on principle and authority to render the Nevada proceedings res judicata as to all concerned, no matter what their outcome. Reo Motor Car Co. v. Gear Grinding Machine Co., 6 Cir., 42 F.

2d 965, Elliot Co. v. Roto Co., above cited.

■ Since defendant cannot escape the Nevada decree, such portions of its amended answer as are directed to the issues of validity and infringement thereby adjudicated must be stricken. That decree, however, does not, in our opinion, adjudicate and so preclude the issue of plaintiff's laches with regard to this suit. Defendant's averments at bar set up plaintiff's complete and conscious acquiescence in its manufacture and sale of some of the constructions now alleged to infringe, for a period of ten years or so, followed early in 1931 by a warning of infringement, delivered, however, before Reinharts, Inc., sold the two tractors which brought about the Nevada litigation. The issues of laches and estoppel raised by this pleading were not, we think, and furthermore, could not have been, adjudicated in the Reinharts, Inc., suit.

The defenses of laches and estoppel which may be invoked in patent suits in equity, 3 Walker on Patents § 570, are closely interrelated, 19 Am.Jur. 637. Laches proper is described in this wise by the Supreme Court: " * * * The cases are many in which this defense has been invoked and considered. It is true, that by reason of their differences of fact no one case becomes an exact precedent for another, yet a uniform principle pervades them all. They proceed on the assumption that the party to whom laches is imputed has knowledge of his rights, and an ample opportunity to establish them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless, or have been abandoned; and that because of the change in condition or relations during this period of delay it would be an injustice to the latter to permit him to now assert them." Galliher v. Cadwell, 145 U.S. 368, 372, 12 S.Ct. 873, 874, 36 L.Ed. 738.

To which the leading text-writer adds: "In fact it may be stated that time alone is not the test of laches. There must be something that practically amounts to an equitable estoppel against the plaintiff, for instance, the investment by the defendant of capital in the infringing business with the knowledge of the plaintiff accompanied by inaction on the part of the latter." 3 Walker on Patents, § 575, p. 1881.

Estoppel (in pais or equitable) is of course a broader bar than laches, which is ordinarily assimilated to prejudicial delay in bringing suit. 4 Pomeroy, Equity Jurisprudence § 1442.

Reinharts, Inc., commingled both defenses in a pleading which hardly reflects the precision of accepted forms. See 4 Walker on Patents, § 887E, pp. 2787–2790. It reads: "11. Defendant further avers, upon information and belief, with respect to alleged infringement of the Turnbull Letters Patent Nos. 1,282,328, 1,455,460 and 1,340,416, that plaintiffs are guilty of laches and are estopped from equitable relief, because plaintiffs, well knowing that devices now alleged to infringe have been made, sold and used for over sixteen years, have not prosecuted a patent infringement suit in connection therewith, but have continuously acquiesced in the rights of this defendant and others, and the public generally, to make, use and sell said devices now alleged to be infringed, and accordingly have encouraged the investment by defendant and others of large sums of money in the alleged infringing business." Answer of Reinharts, Inc., to plaintiff's complaint in Nevada suit, paragraph 11.

Now the Nevada court's adverse determination of the matters so pleaded could and perhaps did (though no evidence was submitted on them) turn upon many factors utterly extraneous to those involved in defendant's answer at bar. Liberally interpreted in general terms of estoppel the Reinharts, Inc., pleading alleges (1) a representation of non-infringement (continuous acquiescence in the rights of "defendant and others, and the public generally, to make use and sell etc."), (2) known Reinharts, Inc., (3) and relied upon by it, (4) to its detriment (the investment of large sums of money in the infringing business). So the defense of estoppel was made to hinge upon any one of those four allegations. None of them—except the first—coincides with the averments at bar. Reinharts, Inc., may not have known of plaintiff's acquiescence in defendant's rights. If it did have such knowledge, its reliance on that acquiescence might well have been unjustified if it knew of plaintiff's prior warning of infringement to defendant. And its reliance, if justified, might not have taken the form of a large and detrimental investment. The questions at bar, on the other hand, of whether defendant knew of the acquiescence, relied upon it (for ten

years before the warning of infringement), and thereby suffered a detriment (investment in the business), are by definition quite distinct. Furthermore, these divergencies between the Nevada issues and those at bar on the score of estoppel are repeated on the score of laches where, indeed, there is an additional discrepancy, viz: the fact that plaintiff delayed about one month before it sued Reinharts, Inc., and about ten years before it even notified defendant that it had grounds for suit.

Finally, as appears from the excerpts above quoted, any reflection upon laches or, cognately, on estoppel excludes the notion that they are anything but personal defenses. They depend upon the relation between a plaintiff and a defendant, or between estoppel—asserter and the one estopped. For one thing "injustice" (laches) or injury (estoppel) to the party sued is an essential element in both. Hence an infringer who has been promptly and unprejudicially sued can hardly urge in his defense that some other infringer would not be. See Kwick-Set, Inc., v. Welch Grape Juice Co., D.C., 14 F.Supp. 137, reversed on other grounds, 2 Cir., 86 F.2d 945. Plaintiff elected to sue Reinharts, Inc., which could not avail itself of the perhaps superior equities in favor of defendant. It should and must, we think, abide by the consequences of that choice, and meet defendant in open court on the issues of laches and estoppel now raised for the first time.

Plaintiff's motion to strike the denials and affirmative defenses in defendant's amended and supplemental answer is granted in part and denied in part in conformity with the views expressed in this opinion.