**SHAFFER et al. v. RECTOR WELL EQUIP-MENT CO., Inc.**

No. 11305.

Circuit Court of Appeals, Fifth Circuit.

May 3, 1946.

Lester B. Clark, of Houston, Tex., for appellants.

Jack A. Schley, of Dallas, Tex., for appellee.

Before HOLMES, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

Appellants brought suit to enjoin alleged infringement of four patents and for an accounting for profits and damages. The defenses interposed were: (1) That plaintiffs' patents were invalid. (2) That they had not been infringed. (3) That the plaintiffs were equitably estopped by laches from maintaining suit. After the taking of testimony and final hearing on all the issues, the lower Court decided the case solely on the issue of laches and dismissed the complaint.

The cases dealing with the defense of laches in patent infringement actions are many and varied, with the decision in each resting upon its own peculiar facts and circumstances. Oddly enough, there seems to be no patent case from the Fifth Circuit that turned on the subject of laches, and no case from the Supreme Court substantially similar in its facts. The elements necessary to constitute laches have been uniformly held to be: (1) an alleged invasion by the defendant of the complainant's right, of which the complainant has had knowledge and an ample opportunity to establish the same in the proper forum; (2) a delay of the plaintiff in the assertion of such rights, by reason of which the defendant has good reason to believe that the alleged rights are worthless or have been abandoned; and (3) changes in the condition or relation of the parties during the period of delay making it unjust to the defendant to permit the plaintiff thereafter to recover.

The following quotation by the lower Court from Halstead v. Grinnan et al., 152 U.S. 412, 14 S.Ct. 641, 38 L.Ed. 495, is both accurate and concise:

"The length of time during which the party neglects the assertion of his rights, which must pass in order to show laches, varies with the peculiar circumstances of each case, and is not, like the matter of limitations, subject to an arbitrary rule.

"Laches is an equitable defense controlled by equitable considerations, and the lapse of time must be so great, and the relations of the defendant to the rights such, that it would be inequitable to permit the plaintiff to now assert them.

"There can be no laches in failing to assert right of which a party is wholly ignorant, and whose existence he had no reason to apprehend."

We agree entirely with the lower Court's legal conclusions in its decision, but we are unable to make a similar application of the essential principles of laches to the facts in this case.

The lower Court found that in January, 1935, the plaintiffs wrote a letter to the defendant, notifying the latter of their ownership of Patent No. 1692582 and calling upon it to desist from infringement and to account for profits; that a number of letters passed between the parties in 1935, the last of which from the plaintiffs to the defendant was dated April 25; that the subject was not brought up again until the plaintiffs wrote the defendant a similar letter on August 1, 1939, calling attention to the patent mentioned in the first letter of January, 1935, and also to Patents Nos. 1589729 and 1927190. [No letter or notice was given by the plaintiffs of alleged infringement of Patent No. 1925406 until the filing of an amended bill of complaint on December 22, 1943. Plaintiffs' original bill of complaint was filed in October, 1943.] The lower Court also found that the plaintiffs at various gatherings of oil men, particularly at oil shows, discussed the matter of infringement with Mr. Rector, the owner of the defendant;[1]

---

[1] Mr. Rector gave the following testimony in reference to visits and discussions of Mr. Shaffer in reference to these patents:

that nevertheless the plaintiffs' course was one reasonably calculated to, and did, lead defendant to believe no suit would be brought; that no attempted explanation was made as to why suit was not brought between January, 1935, and August, 1939, when infringement was again charged, and likewise no excuses were offered for delay between August, 1939, to the date of filing the suit on October 19, 1943; that the correspondence on behalf of the plaintiffs in 1935 was carried on by a firm of attorneys, but at the end of that period of letter writing the firm of lawyers dropped from the picture and the correspondence was thereafter conducted by plaintiffs; that: "Carrying on the dispute, at intervals, for about eight years without a lawyer, was calculated to lull this defendant into a sense of security, and the belief that plaintiffs would not sue. * * * In other words, plaintiffs, by such a vacillating and negligent course have compelled defendant to keep this attorney employed for over nine years in this one matter, and counting possible appeals, there is no telling how long that employment will have to be continued. During all of such period defendant's attorney has been advising it there was no infringement on its part; if there was, that the invalidity of plaintiffs' patents was certain; and for years prior to the filing of this suit that, it was barred by laches. All of which defendants believed and relied upon."

It cannot be said that the defendant had no notice and did not expect trouble in view of the actions of the plaintiffs that required the defendant to keep an attorney employed for over nine years. Indeed, the record seems to indicate that the plaintiff, Shaffer, by virtue of his persistent insistence upon desistence from the alleged infringement, was making, according to defendant, somewhat of a nuisance of himself, and, therefore, the defendant could hardly have been "lulled to sleep" by the inactivity of the plaintiffs.

As has been often stated, laches is not determined solely by the mere passage of time. There must be other considerations that would make it inequitable for the suit to be prosecuted, among the most essential of which is a showing that the defendant has been, or will be, damaged or prejudiced by the delay. The lower Court held that "there was no evidence introduced which would enable the Court or warrant the Court in arriving at an amount of damages, if any, suffered by the defendant." The lower Court found that after the correspondence ending April 25, 1935, "defendant was making its device under its patents, with its business constantly spreading out and growing." The only specific damage or injury to the defendant found by the lower Court was that it was required to hire a lawyer because of plaintiffs' course of conduct. This finding appears to be entirely inconsistent with the other findings that the action of the plaintiffs was "calculated to lull this defendant into a sense of security, and the belief that plaintiffs would not sue."

It would take an act of legerdemain to draw harassment on the one hand and lulling to sleep on the other out of the same factual hat.

It is argued in the brief of appellee that it was injured because during the delay in bringing suit it meanwhile expanded its business in the making of the article claimed to have been infringed.

■ It does not seem that an infringer, whose business was "constantly

---

"Q. Did he ever visit you at oil shows again? A. Yes, sir, in every oil show after that we had a visit from Mr. Shaffer from 1933 on, and at the oil shows Mr. Shaffer would talk about his prior rights and he wanted me to read his claims into my construction, which I continually refused to do, because I do not know patent claims.

\* \* \* \* \* \* \*

"Q. And did any of these various visits—on any of these various visits, did he have copies of his patents with him?

A. Yes, sir, I think in every instance he had his patents with him.

"Q. Did he take them out and display them to you in the booths? A. Yes, sir.

\* \* \* \* \* \* \*

"Q. Did you feel you would be liable to be sued by Mr. Shaffer? A. I felt as though I might be sued, but from your opinions and from the opinions of various people that I talked to, I felt that I could not do anything but go right ahead and manufacture."

spreading out and growing" out of the infringed manufacture of an article, could acquire a legal right to continue to trespass upon the rights of another merely because the other had attempted to get him to desist by persuasion rather than by resorting to litigation. Moreover, the expansion of a business from the profits reaped by infringement is not a prejudicial change of conditions so as to authorize the defending infringer to invoke the defense of laches against a patent owner who has forborne to hale him into Court, meanwhile attempting to settle his claims amicably. Repeated wilful trespasses confer no right to continue them. Stearns-Roger Manufacturing Co. v. Brown, 8 Cir., 114 F. 939; Imperial Chemical Manufacturing Co. v. Stein, C.C.N.Y., 69 F. 616.

■ In this case no deceitful acts, silence, or acquiescence by the plaintiffs was shown, nor was there any evidence that they intentionally, or recklessly, induced or led the defendant to act to his prejudice or detriment. There is no abandonment by the plaintiffs of their patents, and no proof of any damage caused the defendant by the delay. The only damage shown was the hiring of a lawyer to combat the claims so frequently being made by the plaintiffs.

It will be observed that the notice by the plaintiffs as to the infringement of two of the patents was in August, 1939, and that notice of the infringement of Patent No. 1925406 was not given until the amended bill of complaint was filed, although notice of the infringement of Patent No. 1692582 was given in 1935, but all of the notices, except the notice of the infringement of Patent No. 1692582, are of much more recent date.

■ The complaint not only sought an accounting for damages, but it sought an injunction to prevent further infringement, which called for a determination of the validity of the patents and whether or not the plaintiffs were entitled to prohibit further alleged infringement. Even if laches had been shown and deemed to be a defense against accounting for damages that had accrued in the past, it does not follow that this should deprive the plaintiffs of a right to an injunction if their patents were valid and had been infringed. See Imperial Chemical Manufacturing Co. v. Stein, supra; Stearns-Roger Manufacturing Co. v. Brown, supra; Rajah Auto Supply Co. v. Belvedere Screw & Machine Co., 7 Cir., 275 F. 761; Imperial Brass Manufacturing Co. v. Hackney, 7 Cir., 75 F.2d 689.

■ Laches is no bar to testing the validity of a patent [DeSimone v. R. H. Macy & Co., 2 Cir., 57 F.2d 179] nor to an accounting, where defendant knew that he was an infringer. Alliance Securities Co. v. DeVilbiss Manufacturing Co., 6 Cir., 41 F.2d 668; France Manufacturing Co. v. Jefferson Electric Co., 6 Cir., 106 F.2d 605.

■ The burden of proof to establish the defense of laches is on the defendant [United Drug Co. v. Ireland, 8 Cir., 51 F.2d 226; Kelley v. Boettcher, 8 Cir., 85 F. 55, 62; Rajah Auto Supply Co. v. Belvedere Screw & Machine Co., supra] and the failure of defendant to prove injury or damage to itself—a vital element in the establishment of laches—would be fatal to such a defense, even if it had maintained that defense in other respects.

As stated heretofore, the lower Court merely passed upon the question of laches and did not pass upon the questions of validity and infringement of the patents, although the testimony on both questions was before it. In view of our conclusion that the lower Court was in error in holding that the plaintiffs could not recover on the ground of laches, it now becomes necessary for the lower Court to make findings on the question of the validity of plaintiffs' patents and whether or not they have been infringed, and, if so, the amount of damages to be awarded, and the judgment of the lower Court is reversed and the cause is remanded with directions to the Court below to make further findings of fact and conclusions of law and for further proceedings not inconsistent with this opinion.

Reversed and remanded.