## SALEM ENGINEERING CO. v. NATIONAL SUPPLY CO. et al.

Civ. No. 6577.

District Court, W. D. Pennsylvania.

Feb. 5, 1948.

H. L. Shenier, and George D. Lockhart (of Kirkpatrick, Pomeroy, Lockhart & Johnson), of Pittsburgh, Pa., for plaintiff.

Paul N. Critchlow (of Brown, Critchlow, Flick & Peckham), of Pittsburgh, Pa., for defendant.

William B. Jaspert, of Pittsburgh, Pa., for intervener.

GOURLEY, District Judge.

This is an action for patent infringement filed by Salem Engineering Company against The National Supply Company. George J. Hagan Company, by previous order of the Court, has been joined as Intervener Defendant.

Answer was filed by the defendant and intervener defendant, but no responsive pleading has been made by the plaintiff.

The matter originally before the Court involved three questions:

(1) Motion of plaintiff to strike Paragraphs 10 and 11, Seventh Defense of intervener's answer:

(2) Motion of intervener to require further answers to interrogatories propounded to plaintiff, and

(3) Motion of intervener for leave to file additional interrogatories directed to plaintiff.

Subsequent to argument intervener filed:

(a) Withdrawal of motions—

(1) for leave to file additional interrogatories propounded to plaintiff

(2) Which would require plaintiff to make further answers to interrogatories previously propounded to plaintiff.

(b) Amended answer by virtue of Rule 15 (a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, in which Paragraph 10, Seventh Defense of intervener's answer was cancelled, and in lieu thereof Paragraph 11 of the original answer was rewritten as Paragraphs 10 and 11, Seventh Defense.

In view of the foregoing, the question now before the Court is—

Should the Court, by virtue of the provisions of Rule 12 (f) of the Federal Rules of Civil Procedure, and in the exercise of its discretion, strike from intervener's amended answer, Seventh Defense, Paragraphs 10 and 11?

Plaintiff is the owner of two patents which are involved in this proceeding—

(1) Patent 2,296,791, issued September 22, 1942, relates to rotary hearth furnaces and improved features of construction of such furnaces, known as "Furnace Patent".

(2) Patent 2,293,549, issued August 18, 1942, relates to an improved method and apparatus for heating billets, customarily employed in the production of seamless tubes preparatory to the piercing operation of the process producing the tubes.

On the basis of said patents, plaintiff contends it has built up a large and increasing business in the manufacture and sale of rotary furnaces and apparatus for heating billets. That the defendant is infringing on said patent rights to the great injury and damage of the plaintiff.

The defendant contends—

(a) the patents are invalid and unenforceable;

(b) said patents were secured through false representations, and the perpetration of a fraud upon the Patent Office, and

(c) the plaintiff is engaging in acts of unfair competition and in violation of the Anti-Trust laws known as the Sherman Act, 15 U.S.C.A. §§ 1 and 2, and the Clayton Act, 15 U.S.C.A. §§ 13 and 14.

Intervener in its answer sets forth the same defense and demand for relief as the defendant. In addition thereto, intervener in its amended answer sets forth in Paragraphs 10 and 11 of its Seventh Defense as follows:

"(10) On or about November, 1941, intervener installed a rotary furnace at the plant of Babcock & Wilcox Tube Company, at Morado Station, State of Pennsylvania, for use in heating billets for piercing mills, and there is presently a large demand for rotary furnaces for heating billets for tube piercing mills, all of which is known to the plaintiff; and at the time of the installation of intervener's rotary furnace at the Babcock & Wilcox Tube Company plant, plaintiff threatened Babcock & Wilcox Tube Company with a suit for infringement under its patent No. 2,293,549, which threat was brought to the attention of intervener, who, through its counsel, informed plaintiff that its patent 2,293,549 was invalid and requested plaintiff to cease threatening intervener's customers under said patent, and further requested that if plaintiff disagreed with intervener's opinion as to the validity of said patent, plaintiff should pursue the matter further with intervener, which plaintiff failed to do, wherefore plaintiff in filing its belated complaint, is guilty of laches.

"(11) Intervener has been informed and believes and, therefore, avers that in settlement of plaintiff's claim for infringement of intervener's Babcock & Wilcox Tube Company rotary furnace installation, plaintiff induced Babcock & Wilcox Tube Company to purchase from plaintiff a second rotary furnace for use in piercing mills with the understanding that the purchase of the second furnace from plaintiff would absolve Babcock & Wilcox Tube Company from the charge of infringement of the first furnace purchased from intervener; wherefore plaintiff is with unclean hands with respect to the use of its patent 2,293,549 and has violated the Sherman Act, Title 15, U.S.C. Sec. 1, and 2 [15 U.S.C.A. §§ 1, 2], and the Clayton Act, Title 15 U.S.C. Sec. 13 and 14 [15 U.S.C.A. §§ 13, 14], and cannot maintain the present suit against intervener's vendee."

The plaintiff argues the Seventh Defense set forth in Paragraphs 10 and 11 of the amended answer should be stricken for the reasons that:

1. It introduces new matter;

2. It relates to res inter alios acta;

3. It comprises matter which cannot be pleaded by the original defendants;

4. It is impertinent;

5. It does not state facts constituting a defense of laches in Paragraph (10) thereof since this paragraph;

a. Depends upon plaintiff's relation to a third party;

b. Does not set forth an unreasonable lapse of time between the notice of infringement and the filing of the suit;

c. Does not set forth facts creating an equitable estoppel;

6. It does not state facts in Paragraph (11) thereof constituting any injury to intervener for that:

a. No acts of plaintiff spelling "unclean hands" are alleged;

b. No facts making out a violation of the Sherman Act appear;

c. No facts making out a violation of the Clayton Act are stated.

The motion for leave to intervene was considered by another member of this Court, and in permitting the intervention it was held, "It is plain the applicant's defense and the main action have a question of law and fact in common".

■ I believe the action of the Court in permitting intervention was proper since the intervener would be bound by an adverse judgment rendered against the defendant. Innis Speiden & Co. v. Food

Machinery Corp., D.C., 2 F.R.D. 261; Ostby & Barton Co. v. Jungersen, D.C., 41 F.Supp. 552.

It is claimed by intervener that the matter now before the Court was considered by another member of this Court at the time the petition for leave to intervene was filed. I have been advised by my esteemed associate that the only question which he adjudicated was the right to intervene generally, with no consideration being given to the specific defenses set forth in the answer attached to the motion for leave to intervene.

In view of this situation, it is proper for the Court at this time to adjudicate the question as to whether the motion to strike Paragraphs 10 and 11 of the Seventh Defense in intervener's amended answer should be granted or refused.

Rule 24 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following Section 723c, does not authorize one given the privilege to intervene as a defendant, the right to set up and enforce against the plaintiff a defense not available to the original defendant and in which the defendant has no interest. The permission to intervene is based on the theory that the intervener may be placed in a position to assert in the action a right of his in respect of some thing in dispute between the original parties. So, the intervener is limited to the field of litigation open to the original parties.

The intervener in the present suit installed a rotary furnace for use with an old tube mill at a plant of the defendant. The plaintiff's claim is based on the alleged infringement of its patent rights by the defendant in the use of said equipment without license or authority from the plaintiff.

The intervener contends that in 1941 it had installed at the plant of Babcock & Wilcox Tube Company, who is not a party to this action, a rotary furnace for heating billets for a tube piercing mill. That said installation was of the same type in connection with which complaint is now made by the plaintiff against the defendant. That when the installation was made by intervener for Babcock and Wilcox Company, the intervener notified the plaintiff it was not infringing plaintiff's patent rights, and to institute action against intervener if plaintiff believed to the contrary. That since plaintiff did not pursue the matter with intervener when requested to do so, the plaintiff lost its rights to recover from intervener, who by contract is liable to the defendant in the instant action, for the payment of any money judgment rendered in favor of the plaintiff and against the defendant. That the instant action was not filed until June 24, 1947, and that during said period of approximately five years, intervener has built up its business and incurred liabilities through plaintiff's acquiescence.

The plaintiff contends laches is a personal defense, and that the intervener or the defendant cannot complain because no action was filed by plaintiff against the alleged infringer, Babcock & Wilcox Company. That in the instant case notice of infringement by defendant was sent May 29, 1947, and this action was filed June 24, 1947, and, as a result thereof, no defense of laches or equitable estoppel could be presented.

The intervener also alleges the plaintiff misused its patent rights in violation of the Sherman and Clayton Acts. The plaintiff states such a defense is not proper since the patents of plaintiff gave it a monopoly, and the plaintiff may grant or withhold licenses at its pleasure.

To recapitulate, the claim made by intervener in Paragraph 10, Seventh Defense, is based on laches. The claim in Paragraph 11, Seventh Defense, is based on the doctrine of unclean hands and violations of the Sherman Anti-Trust Act and Clayton Act.

In passing upon this question, it is first necessary to consider whether the defendant could have pleaded the matters which have been set forth by the intervener. If the answer is in the affirmative, the pleading is proper, and improper if the answer is in the negative.

In short, are the questions which arise outside the issues raised by the complaint and answer?

The case of Chandler & Price Co. v. Brandtjen & Kluge Inc., et al., 296 U.S.

998

53, 56 S.Ct. 6, 80 L.Ed. 39, has some similarities to the instant case.

Plaintiff claimed patent infringement by defendant who was not the manufacturer, and asked for an accounting and injunctive relief. Intervener was the manufacturer and sold defendant the equipment out of which plaintiff's claim was filed. After plaintiff placed its equipment on the market, plaintiff threatened to sue users for infringement, and as a consequence defendant required intervener to save it harmless. When plaintiff requested to respect its patent rights, the matter was referred to intervener who asked if suit would be brought against defendant or intervener who was the manufacturer. Plaintiff's threats to bring infringement suits against users injured and unnecessarily harassed intervener's customers. Although intervener's device was known to plaintiff for a long period of time and it was being sold throughout the United States, plaintiff did not sue intervener. Defendant did not have sufficient interest to defend the action, and intervener had to protect its interest. Intervener and defendant filed answer in which infringement was denied, and invalidity of plaintiff's patent was asserted. Intervener in its answer separately set up a counterclaim against plaintiff for infringement of one of its patents, and asked for an injunction and accounting. Plaintiff moved to dismiss intervener's counterclaim on the theory that it stated a cause of action to which the original defendant was a stranger.

The sole question before the Supreme Court was whether intervener may bring into said action a controversy between it and plaintiff in which defendant had no interest. It was held that the counterclaim should be dismissed since the intervener is limited to the field of litigation open to the original parties.

The only distinguishing characteristic in the instant case is that plaintiff threatened a customer of intervener some five years before this action was filed. That since intervener requested or dared plaintiff to institute action, and there was not an election so to do, is plaintiff guilty of such laches as would bar a right to recover against defendant. Furthermore, the defendant and intervener both claim violation by the plaintiff of the Clayton and Sherman Acts.

The Sherman Anti-Trust Act, 15 U.S.C.A. § 1, provides, inter alia, that every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce is illegal.

The Sherman Anti-Trust Act, 15 U.S.C.A. § 2, provides, inter alia, that every person who shall monopolize or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce shall be guilty of an unlawful act.

The Clayton Act, 15 U.S.C.A. § 13, provides, inter alia, that it shall be unlawful for any person engaged in commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where the effect of such discrimination may be to lessen competition, tend to create a monopoly or to injure, destroy or prevent competition with any person, or who grants, knowingly receives a benefit as a result of such discrimination.

The Clayton Act, 15 U.S.C.A. § 14, provides, inter alia, that it shall be unlawful for any person engaged in commerce to make any sale of any commodity, whether patented or unpatented, or to fix a price charged therefor on condition that the individual with whom the agreement is made shall not use or deal in the goods or merchandise of a competitor where the effect of such agreement is to substantially lessen competition or tend to create a monopoly.

Does, therefore, either of the defenses set forth in intervener's amended answer fall within the rule that " an intervener in a patent infringement suit cannot plead matters which were not open to the parties in the original field of litigation"?

As to Paragraph 10 of the Seventh Defense, "laches", mere delay, unaccompanied by other relevant factors, does not ordinarily constitute laches. To be an effective bar, it must be both inexcusable and prejudicial to the party complaining. Thus,

when deferment of action is so unusual as to appear unreasonable, upon plaintiff devolves the burden of disclosing and explaining the impediments to early action.

■ It is seemingly unjust that any one should be allowed to infringe a valid patent and deprive its owner of royalty to which the patent entitles him. On the other hand, it is inequitable for a person to sleep on his rights for years and lead another to think that the latter is safe in following counsel's advice that he may manufacture a proposed device with impunity, and then, when he has made extensive investments and built up a prosperous business, penalize him and innocent investors for doing what might have been averted by timely action. Thus, there are two elements in effective laches; (1) lack of diligence on the part of the plaintiff, (2) injury to complaining party due to such lack. Rome Grader & Machinery Corp. v. J. D. Adams Mfg. Co., 7 Cir., 135 F.2d 617; Westco-Chippewa Pump Co. v. Delaware Electric & Supply Co., 3 Cir., 64 F.2d 185, 186.

■ Laches in bringing an infringement suit is no bar to the test of the validity of a patent. De Simone v. R. H. Macy & Co., Inc., 2 Cir., 57 F.2d 179, certiorari denied 287 U.S. 607, 53 S.Ct. 11, 77 L. Ed. 528.

■■ A plaintiff in a patent infringement suit will be entitled to an injunction though guilty of laches which could bar an accounting for damages and profits. Delay in bringing suit for infringement of a patent will not bar the suit except in extreme situations, but may bar the right to an accounting. The plaintiff in a patent infringement suit, whose right to accounting was contested on the ground of laches, held required to bear the burden of dilatory acts and conduct of his predecessors, whether well or ill advised. Simpson v. Newport News Shipbuilding & Dry Dock Co., D. C., 18 F.2d 318; Imperial Brass Mfg. Co. v. Hackney, 7 Cir., 75 F.2d 689.

■ There is justification for withholding damages for patent infringements committed before commencement of suit, when laches is established, notwithstanding injunctional relief is granted; but, when holder of patent, in addition to being guilty of laches, has by his conduct estopped himself from asserting his rights under the patent, all relief should be denied, and bill dismissed, laches being not mere delay, but delay that works disadvantage to another. George J. Meyer Mfg. Co. et al. v. Miller Mfg. Co., 7th Cir., 24 F.2d 505.

■ Equity court will not generally refuse an injunction in patent infringement suit on account of delay in seeking relief, where proof of infringement is clear, notwithstanding delay may be such as to preclude party from any right to account for past profits. Gillons et al. v. Shell Co. of California, 9 Cir., 86 F.2d 600, certiorari denied 302 U.S. 689, 58 S.Ct. 9, 82 L.Ed. 532.

■ In determining whether action for patent infringement is barred by laches, there must be a balancing of equities, since it is inequitable for infringer to deprive patent owner of royalty, and it is inequitable for patent owner to sleep on his rights for years and lead infringer to make large investments under belief that he is not infringing. Rome Grader & Machinery Corp. v. J. D. Adams Mfg. Co., supra.

■ The question of laches does not depend upon the fact that a certain definite time has elapsed since the cause of action accrued, but upon whether, under all the circumstances of a particular case, the plaintiff is chargeable with a want of due diligence in failing to institute proceedings earlier. Townsend v. Vanderwerker, 160 U.S. 171, 16 S.Ct. 258, 40 L.Ed. 383; Starr Piano Co. v. Auto Pneumatic Action Co., 7 Cir., 12 F.2d 586.

■ It is necessary that an infringer in a patent case establish that the delay in filing the infringement proceeding resulted in prejudice to the defendant in order to invoke as a just defense the doctrine of laches. If the facts just stated cannot be established, the delay in filing the infringement proceeding will not preclude relief either by way of injunction or accounting for damages in favor of the patentee. B. F. Sturtevant Co. v. Massachusetts Hair & Felt Co., 1 Cir., 122 F.2d 900.

■ Public policy favors the rule that litigation for the purpose of ascertaining and sustaining alleged rights of a patentee

or manufacturer should be brought against the alleged wrongful manufacturer rather than against the customers of the manufacturer. Maytag Co. v. Meadows Mfg. Co., 7 Cir., 35 F.2d 403, 410.

The effect which may reasonably be anticipated of harrassing the purchasers of a manufacturer by claims for damages would be to diminsh the manufacturer's opportunities for sale. No one wishes to buy anything, if with it he must buy a lawsuit. Maytag Co. v. Meadows Mfg. Co., supra; Kessler v. Eldred 206 U.S. 285, 289, 27 S. Ct. 611, 51 L.Ed. 1065.

However, an intervener in a patent infringement suit is limited to the same defenses as the original defendant, and the intervener has the same rights and privileges as had it originally been made a party defendant. E. G. Staude Mfg. Co. v. Berles Carton Co., D. C., 31 F.Supp. 178; Chandler & Price Co v. Brandtjen & Kluge, Inc., et al., 296 U.S. 53, 56 S.Ct. 6, 80 L.Ed. 39.

■■■■ Also while a patentee is getting his patent sustained, he is not bound to assert his claims to their fullest scope by suing every conceivable infringer. There is today some reciprocity of duty in this regard; if a manufacturer fears that he will be charged to infringe, he can always inquire of the patentee, and if the answer is unsatisfactory, he can bring an action for a declaratory judgment. The time has now passed when a patentee may sit by and refuse to show his hand. Clair et al. v. Kastar, Inc., 2 Cir., 148 F.2d 644.

■■■ Laches is a personal defense which flows from the relationship of the parties. Caterpillar Tractor Co. v. International Harvester Co., D.C., 32 F.Supp. 304, modified on the question of res adjudicata 3 Cir., 120 F.2d 82, 139 A.L.R. 1.

The cause of action in the instant case is the use by the defendant of a single machine or unit which it is claimed infringes the patent rights of the plaintiff. The defendant has no interest in the patent rights of the intervener, nor was the defendant a party to the previous difficulty between the plaintiff, intervener and Babcock and Wilcox Company. The bill neither alleges any cause of action nor prays judgment against the intervener. Intervener was not sued and until granted leave to intervene, it was a stranger to the suit.

There is no suggestion that the defendant has any interest in the claim of the intervener as to the laches of the plaintiff. The intervener is not entitled to come into the suit for the purpose of having adjudicated a controversy solely between it and the plaintiff.

■■■ The law seems to be settled that matters which have no bearing upon a controversy of a suit, which are irrelevant or immaterial, are properly subject to a motion to strike from the pleadings.

■■■ Under the circumstances in the instant case, the defendant could not have invoked the doctrine of laches as a defense to the action of the plaintiff. This is true for the reason that the defendant was a stranger to the matters upon which the doctrine is premised.

Since it is desired to enter into a field of litigation which was not open to the original parties to this action, the motion to strike Paragraph 10, Seventh Defense of the amended answer of intervener, is granted.

As to Paragraph 11, Seventh Defense, amended answer of intervener—

That the plaintiff engaged in acts of unfair competition in its dealings with Babcock and Wilcox Company;

That plaintiff is with unclean hands with respect to its patent rights; and

That plaintiff has violated the Sherman Anti-Trust and Clayton Acts, the Court is confronted with an obligation to give effect, on the one hand, to the provisions of the patent laws granting certain valuable rights in the nature of monopolies and, on the other hand, to the provisions of the Sherman Act prohibiting any combination or conspiracy in restraint of trade. United States v. National Lead Co., 332 U. S. 319, 320, 67 S.Ct. 1634.

■■■ One coming into a court of equity must do so with clean hands, and to aid a party who does not fall within that category would make the Court the abettor of iniquity. A court of equity acts only when and as conscience commands, and if

the conduct of the plaintiff be offensive to the dictates of natural justice, then, whatever may be the rights he possesses and whatever use he may make of them in a court of law, he will be held remediless in a court of equity. Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 54 S. Ct. 146, 78 L.Ed. 293; Deweese v. Reinhard, 165 U.S. 386, 17 S.Ct. 340, 41 L.Ed. 757.

Courts of equity may, and frequently do, go to greater extremes to give and withhold relief where to do so would be in furtherance of public interest, than they are accustomed to go where only private interests are involved. Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed. 789.

It is sufficient to say in whatever manner the issue may be tendered, courts of equity will withhold relief where the patentee, and those claiming under him, are using the patent privilege contrary to the public interest. Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363.

Bad faith is an essential element in the charge of unfair competition where such charge is based upon claims of patent infringement and threats to take action based upon such infringement. Art Metal Works v. Abraham & Straus, 2 Cir., 70 F. 2d 641.

Where a campaign is conducted which is designed to destroy a competitor's business, and where ample opportunity is presented to litigate patents covering products involved in the competition which is not availed of, the inference of bad faith is inescapable, as regards question of unfair competition. Celite Corp v. Dicalite Co., 9 Cir., 96 F.2d 242, 243.

The courts cannot permit unfair practices to go on which arrest or obstruct a rival in business. If the attacks or dealings with Babcock and Wilcox Company by plaintiff in the instant case were inspired by a desire to unlawfully intimidate Babcock & Wilcox Company, which might lawfully buy other than the patented article, and these actions result in substantial loss to the alleged infringer, such activities would place the plaintiff in the class of suitors with unclean hands. Art Metal Works v. Abraham & Straus, supra.

This statement would not have application in the instant case since no possible loss could be sustained by the defendant as a result of the circumstances which arose between the plaintiff, intervener and Babcock and Wilcox Company.

The motion to strike that part of Paragraph 11, Seventh Defense, amended answer of intervener, which relates to the doctrine of "unclean hands", will be granted.

The allegations which relate to violations of the Sherman and Clayton Acts by the plaintiff, if established by the measure of proof required by law, would be relative to the determination of the issues raised in the instant case. The defendant has claimed said defenses in its answer, and the intervener set forth a similar defense in another part of its answer which was filed when leave to intervene was granted.

Allegations in Paragraph 11 of the Seventh Defense which relate to violations of the Sherman and Clayton Acts are merely additive to the allegations in the Fifth Defense of intervener's answer. Since said allegations are repetitious and make reference to detailed facts of an evidentiary nature, motion of plaintiff to strike the allegations which relate to violations of the Sherman and Clayton Acts will be granted.

The questions which relate to violations of the Sherman and Clayton Acts may be found material to the adjudication of the issues raised herein. I desire that it be clearly understood that the striking of said allegations from Paragraph 11 of the Seventh Defense in the amended answer of the intervener is not to debar or deny the intervener the right to offer proof in support thereof, since the allegations in the Fifth Defense of intervener's answer would authorize and justify such proof.

### Order.

And Now, this 5th day of February, 1948, the motion of plaintiff to strike Paragraphs 10 and 11, Seventh Defense, Intervener's Amended Answer, is granted for the reasons set forth in the within opinion.