**GALION IRON WORKS & MFG. CO. v. BUFFALO–SPRINGFIELD ROLLER CO.**

Civ. No. 1338.

United States District Court
S. D. Ohio, W. D.

Oct. 30, 1952.

Harker H. Hittson, Columbus, Ohio, (Lawrence B. Biebel of Maréchal, Biebel, French & Bugg, Dayton, Ohio, of counsel), for plaintiff.

Clarence B. Des Jardins, Howard T. Keiser, of Des Jardins, Robinson & Keiser, Cincinnati, Ohio (Arthur E. Dowell, Jr., and Arthur E. Dowell, III, Washington, D. C., of counsel), for defendant.

NEVIN, Chief Judge.

This is a suit under the patent laws of the United States. Plaintiff and defendant are competitors. Both are Ohio corporations.

The suit was instituted by the filing on July 26, 1950, of a complaint in which plaintiff, The Galion Iron Works and Manufacturing Company, of Galion, Ohio, charged the defendant, The Buffalo-Springfield Roller Company, of Springfield, Ohio, with infringement of Keeler patent No. 2,197,395, of which plaintiff is the owner.

In its complaint, plaintiff also prayed for a Declaratory Judgment that Greiner patents Nos. 2,359,519 and 2,442,563 owned by defendant, are invalid and that plaintiff, in any devices manufactured by it, had not infringed them.

Defendant answered the complaint on September 29, 1950, denying infringement of Keeler patent No. 2,197,395 and denying the allegations of invalidity and non-infringement of Greiner patents Nos. 2,-359,519 and 2,442,563, and attached to the answer four counterclaims. The first counterclaim alleged infringement by plaintiff of Greiner patent No. 2,359,519. The second counterclaim alleged infringement by plaintiff of Greiner patent No. 2,442,563. The third counterclaim alleged infringement by plaintiff of the U. S. design patent No. Des. 138,539, owned by defendant, and the fourth counterclaim prayed a declaratory judgment of invalidity and non-infringement of the Keeler patent No. 2,-197,395. Issue was joined by plaintiff's reply to the counterclaims, filed on October 18, 1950.

I.

The patents in suit.

From the foregoing it will be observed that in the pleadings four United States Letters Patent originally were involved in this suit. The number of those Letters Patent respectively; the party to whom issued or assigned; their date of issue; their application date and what the patent states each patent is "for" are as follows:

Patent No. 2,197,395 to Raymond W. Keeler, Galion, Ohio, assignor to The Galion Iron Works and Manufacturing Company, a corporation of Ohio, issued on April 16, 1940, on application dated January 21, 1937, for "Trench Roller".

Patent No. 2,359,519 to Carl F. Greiner, Springfield, Ohio, assignor to the The Buffalo-Springfield Roller Co., Springfield, Ohio, a corporation of Ohio, issued on October 3, 1944, on application dated November 23, 1942, "being, (as stated in the patent) a continuation-in-part of my (Greiner's) co-pending application filed November 7, 1940" which "has since become abandoned". (File Wrapper Ex. P. 24 and Ex. D. 76 herein) for a "Road Roller".

Patent No. 2,442,563 to Carl F. Greiner, assignor to defendant herein, issued on June 1, 1948 on application dated September 27, 1946 for "Road Roller Frame Means for protecting Motors and Radiators from Dust", and Design patent No. Des. 138, 539 to John F. Harrison and Carl F. Greiner, Springfield, Ohio, assignors to defendant herein, issued August 15, 1944 on application dated May 1, 1944 for an "ornamental design for a road roller".

## II.

### Greiner Patent No. 2,442,563.

█ Upon its own motion defendant agreed at the start of the trial that an order could be entered finding Greiner Patent No. 2,442,563 invalid and granting plaintiff's prayer for a declaratory judgment of invalidity and non-infringement by it with respect to this patent.

As to this the record (PP 2–65 shows as follows:

"Mr. Des Jardins: (of Counsel for Defendant) May it please the Court, I have a statement I would like to make that relates to this case. * * * Among the patents that were declared upon in this suit is a patent No. 2,-442,563 of Carl F. Greiner dated June 1, 1948, which was granted on an application filed September 27, 1946. In the course of our preparation for this trial, * * * I found there were several machines embodying the invention of this patent that had been sold by the Buffalo-Springfield Roller Company more than a year prior to the filing date of the application for patent. Of course, under the law that renders the patent invalid. * * * I, therefore, formally admit on the record that * * * the defendant consents to the entry of a judgment finding that patent (No. 2,442,563) invalid * * *. And we consent further to the entry of a judgment dismissing our counter-claim, that is, the second counter-claim attached to the Answer. * * * Now, as far as the matter of costs and reasonable attorney fees are concerned, that I understand is a matter that rests

in the discretion of your Honor. * * *

"Mr. Hittson: (of Counsel for Plaintiff) * * * That apparently disposes of that patent (No. 2,442,563) insofar as this litigation is concerned. * * * I would like to make one comment * * * that the question of costs and attorney fees in connection with this patent which has been withdrawn be reserved until later.

"The Court: We will take that up at a later time, if that is satisfactory.

"Mr. Hittson: Very well. * * *

"The Court: Now all that is said in that (second) counter-claim, (and the reply thereto) as I understand, the Court needs consider no further.

"Mr. Des Jardins: You are right.

"The Court: Regarding costs and things of that kind, * * * we can take that up later.

"Mr. Des Jardins: I think so, yes."

This leaves, then, the other three patents heretofore referred to, presently before the Court for its consideration and determination.

## III.

### Keeler Patent No. 2,197,395 (Ex. P69)

*Contentions of the respective parties and the law applicable thereto.*

█ In its Findings of Fact and Conclusions of Law hereinafter set forth and here made an integral part of this Decision, the Court will deal in some detail with the claims in issue of the patents in suit; the defenses thereto, including the prior art, as fully as deemed necessary, and other pertinent data. To discuss them now would be a mere duplication. It will content itself for present purposes merely in stating the contentions of the parties themselves and the applicable law, as the Court understands it, for, as stated by the Court in Penmac Corp. v. Esterbrook Steel Pen Mfg. Co., D.C., 27 F.Supp. 86, at page 87: "it is now (1939) a work of supererogation to write a considered and detailed opinion on the facts in what used to be an equity cause and is now called a non-jury cause, for the place of the opin-

814

ion must now be taken by formal findings of fact and conclusions of law, separately stated and numbered".

As to the *validity* of the claims in issue of Keeler patent in suit No. 2,197,395.

Plaintiff contends that this "is a pioneer patent"; that "in the field of trench rollers, there is nothing like it in the prior art"; that the Trench Roller of the Keeler patent "is the very first instrumentality ever built, which was a unitary roller designed to do the job for which it was built". That in order to solve the problem many ideas were tried out as for example the use of "agricultural tractors" the primary purpose of which was to draw plows or other agricultural implements and thus to be substituted for horses, and that such instrumentalities could not possibly be integrated into a machine specifically developed to meet the requirements of a trench roller.

Defendant pleads a number of reasons why in its opinion the Keeler patent-in-suit is invalid; those chiefly stressed and relied upon, however, are as follows:

(a) That the claims in issue are combination claims which purport to cover a particular combination of old elements; that there is no novelty in the combination of elements claimed; that the Keeler patent in suit cannot be distinguished from the prior art and that it is anticipated by and lacking in invention over the prior art (b) because Keeler was not the original and first inventor of the subject matter and (c) because plaintiff is barred by laches from enforcing this patent against this defendant.

In response to some of the foregoing assertions by defendant, plaintiff in its brief (P 26) says "Plaintiff does not contend that the individual elements of the Keeler patent are, per se, new. Plaintiff does contend, however, that the record shows conclusively that Keeler was the first to devise the trench roller as a unitary instrumentality designed to do a particular job."

■ It seems unnecessary to cite or quote, to any extent, the law as found in the decisions, applicable to the above contentions of the parties. The legal principles involved are as well known to counsel as to the Court. Among them are the following:

1. It has been so many times held that the presumption is that a patent is valid and that the burden rests on the assailant of the patent to prove its invalidity, as to have become almost axiomatic. Forestek Plating & Mfg. Co. v. Knapp-Monarch Co., 6 Cir., 106 F.2d 554; Harman v. Scott, D. C., 90 F.Supp. 486.

■■ 2. The fact (assuming it to be a fact) that the claims in issue "are combination claims" as asserted by defendant, does not, of itself, render the patent invalid. Defendant recognizes this to be true by stating in its brief (P 32) that "These claims cannot be valid unless the combination covered by them is a new one". This is in keeping with the rule universally laid down by the courts. In Gillman v. Stern, 2 Cir., 114 F.2d 28, at Page 30, the Court (by Judge Learned Hand) say: "If, however, an old article must be physically changed, even slightly, to fit the new use, it becomes itself a new 'machine' or 'manufacture,' and the statute is satisfied". See also Lakewood Engineering Co. v. Walker, 6 Cir., 23 F.2d 623, and Trabon Engineering Corporation v. Dirkes, 6 Cir., 136 F.2d 24.

■ 3. Defendant bases its contention that "Keeler was not the original and first inventor of the subject matter" upon the allegation in its Answer and Counterclaim that "if invention is involved" in Keeler patent No. 2,197,395 in suit, such invention was conceived and originated by one Harry A. Sparks and by him disclosed to Keeler, prior to any conception "of the alleged invention by the said Keeler".

As shown by the record, a considerable part of the time during the trial itself and in preparation therefor, by way of depositions and otherwise, was taken by defendant in its effort to establish this assertion as a fact. Further reference to the evidence bearing on this contention will be made in the Findings of Fact.

However, it may not be amiss to state here briefly that the record discloses that Harry A. Sparks during the years from

1931 to 1938 was connected in various capacities with the Bituminous section of the Bureau of Construction of the Highway Department of the State of Ohio, and that he was much interested in the methods and apparatus used by contractors in the construction of bituminous paving throughout the state. Mr. Sparks died on September 24, 1945.

The burden of proving this contention, by at least a preponderance of the evidence, is again upon defendant, under the familiar rule that one who attacks the validity of a patent on any ground, whether it be anticipation, lack of invention or lack of originality, has the burden of proof. Soley v. Hebbard, 5 App.D.C. 99; International Carrier-Call & Television Corporation v. Radio Corporation of America, 2 Cir., 142 F.2d 493, 495.

In the instant case defendant has failed to sustain that burden. There was no written or documentary evidence submitted to adequately establish defendant's assertion. There was no competent proof offered that Sparks ever at any time communicated the "invention" of the Keeler patent in suit to Keeler. Sparks, himself, never made any such claim or statement.

There is in the record some oral testimony, based entirely on "hearsay" or "secondhand information" introduced in an effort to prove that Sparks was the "first inventor of the subject matter", but even, if competent, this evidence would be of doubtful value. Unsupported testimony of this character, it has been held, "is open to grave suspicion". In Deering v. Winona Harvester Works, 155 U.S. 286, at page 301, 15 S.Ct. 118, 123, 39 L.Ed. 153, the Court say: "Granting the witnesses to be of the highest character, and never so conscientious in their desire to tell only the truth, the possibility of their being mistaken as to the exact device used, which, though bearing a general resemblance to the one patented, may differ from it in the very particular which makes it patentable, is such as to render oral testimony peculiarly untrustworthy; particularly so if the testimony be taken after the lapse of years from the time the alleged anticipating device was used".

Defendant asserts that "Even should the Court find that the Keeler patent in suit is valid and infringed by defendant, it is not enforcible against defendant because of plaintiff's laches. In short, this is a 'stale claim'". The facts concerning the alleged "laches" are sufficiently set forth in the Findings of Fact.

The burden of proof of such laches as to effect an estoppel against plaintiff to enforce Keeler patent in suit, if valid, against defendant herein, is upon defendant. In Shaffer v. Rector Well Equipment Co., Inc., 5 Cir., 155 F.2d 344, at Page 347, the Court say: "The burden of proof to establish the defense of laches is on the defendant, and the failure of defendant to prove injury or damage to itself—a vital element in the establishment of laches—would be fatal to such a defense, even if it had maintained that defense in other respects".

Defendant too, must show that any delay in bringing suit, if such there was, resulted in injury to it, due to some inequitable conduct of plaintiff; that there had been such delay as resulted in injury or prejudice to defendant, which would render it inequitable for plaintiff to prevail. France Mfg. Co. v. Jefferson Electric Co., 6 Cir., 106 F.2d 605. Defendant again has failed to sustain this burden.

The Court is of the opinion and so finds that claims 1, 4, 13 and 18 here in issue of Keeler patent in suit No. 2,197,395 are valid and that plaintiff is not estopped from enforcing them against defendant herein.

As to *infringement* of the claims in issue of Keeler patent in suit No. 2,197,395.

In the Keeler patent in suit there are two illustrated embodiments of the invention, the first being disclosed particularly in Figs. 1 to 4 inclusive, the second in Figs. 9 to 11 inclusive. The evidence shows that a "trench roller" is a device which is to be used in connection with hard-surfaced highways, particularly for compacting the material used in "widening" the highways.

It is admitted by defendant, both in the record and in its brief, that "within the six years next preceding the filing of the com-

plaint herein" defendant "made, used and sold two forms of trench roller known, respectively, as the Model TR–3 and the Model TR–3B". Defendant states that the "Model TR–3 is illustrated and described in Defendant's Exhibit D65" and that its "Model TR–3B is illustrated and described in defendant's Exhibit D66."

Defendant also admits (R. P 33) that, if valid, claims 13 and 18 of the Keeler patent in suit were infringed by the Buffalo-Springfield TR–3 trench roller. By amendment, plaintiff has now limited its charge of infringement to these two particular claims of the Keeler patent in suit as applied to the Buffalo-Springfield TR–3 trench roller. (R. P 560, et seq.)

Defendant further admits (R. Pp 33–34) that, if valid, claims 4, 13 and 18 of the Keeler patent in suit were and are infringed by the Buffalo-Springfield TR–3B trench roller. By amendment (R. Pp 560 and 617) plaintiff has now limited its charge of infringement to four claims of the Keeler patent in suit, to-wit: Claims 1, 4, 13 and 18, as applied to the Buffalo-Springfield TR–3B trench roller.

Inasmuch as claims 4, 13 and 18 here in issue of the Keeler patent in suit have already been held valid by the Court, it follows that defendant has infringed claims 13 and 18 by its TR–3 trench roller, and claims 4, 13 and 18 by its TR–3B trench roller.

The only issue of infringement then left for determination is whether defendant also infringes claim 1 by the Buffalo-Springfield TR–3B trench roller. As this also is referred to in the Findings of Fact the Court thinks it sufficient merely to state here its conclusion which is that defendant by its device TR–3B does infringe claim 1 of the Keeler patent in suit. In this connection (as already indicated) it should be noted for the record at least, that defendant's Model TR–3 trench roller is not charged to infringe claims 1 and 4 of the Keeler patent in suit, No. 2,197,395.

## IV.

### Greiner Patent No. 2,359,519, (Ex. D–75)

Greiner patent in suit No. 2,359,519 contains 3 claims. Of these, only claims 1 and 3 are here in issue. (R. P 572) It is directed to a "tandem" roller. These claims will be set out in full in the Findings of Fact, and hence need not be recited here.

As heretofore indicated, this patent comes into this litigation in the following manner: Plaintiff in its complaint, prays for a declaratory judgment declaring Greiner patent No. 2,359,519 invalid and "that the tandem rollers manufactured by the plaintiff do not infringe" it. Defendant, on the other hand, in the first counter claim attached to its answer, asserts the validity of the patent and alleges infringement of it by plaintiff "by making and selling the road rollers illustrated in defendant's Exhibits A and B". (Attached to the Answer).

As to the *validity* of the claims in issue of Greiner patent in suit No. 2,359,519.

All of the pertinent legal principles hereinbefore referred to (in connection with the Keeler patent in suit) are equally applicable here in connection with Greiner patent No. 2,359,519,—among others, that the presumption is that it is valid and that the burden rests on plaintiff (here the assailant) to prove its invalidity.

Plaintiff has attacked the validity of the patent on a number of grounds. Because of its conclusion, the Court deems it unnecessary, except with respect to the ground on which its conclusion is based, to do more than briefly state, for the record, the contentions of the respective parties.

Plaintiff asserts that Greiner patent No. 2,359,519 is invalid for the same reason that Greiner patent No. 2,442,563 was admitted by defendant to be invalid, that is to say, because of a sale by defendant more than one year prior to the filing date of the application of Greiner patent in suit No. 2,359,519.

As to this the record shows (P 726, Ex. P 26) that the parties entered into a stipulation reading in part as follows: "1. That The Buffalo-Springfield Roller Company, Defendant herein, sold a roller embodying the invention of patent No. 2,359,-519 more than one year prior to November 23, 1942. 2. Said roller embodied the form of Fig. 3 rather than of Fig. 5 of said Greiner patent No. 2,359,519."

In view of the stipulation defendant in its brief (P 61) says: "As to any claim that is based upon Fig. 3 of the patent in suit, defendant is entitled to the date of November 7, 1940, the date of filing of the abandoned application of which the application filed November 23, 1942 was a continuation-in-part. As to any claim based on the disclosure of Fig. 5 of the patent, defendant is entitled only to the filing date of November 23, 1942".

The record shows that Greiner on November 7, 1940 filed an application for U.S. patent, Serial No. 364,735. This application was finally rejected on May 29, 1942. (File Wrapper Ex. D. 76). It became abandoned on November 29, 1942, by failure to reply to the final rejection. Just prior to the abandonment of the earlier application Greiner, on November 23, 1942, filed application Serial No. 466,649 on which the patent in suit No. 2,359,519 was granted.

Defendant contends that it is clear that Greiner was entitled to the filing date of the earlier application, November 7, 1940, for "all subject-matter that was common to the two applications," that "in law, the application filed November 23, 1942, is considered as an amendment and continuation of the application filed November 7, 1940," citing in support of its contention, Novadel Process Corp., v. J. P. Meyer & Co., 2 Cir., 35 F.2d 697, 701; Smith v. Goodyear Dental Vulcanite Co., 93 U.S. 486, 500, 23 L.Ed. 952; Kinnear Mfg. Co., v. Wilson, 2 Cir., 142 F. 970, 973.

Plaintiff also asserts that the oath which accompanied the application for Greiner patent in suit No. 2,359,519 is inaccurate and was obviously misleading in the Patent Office and that "this alone should invalidate the patent because of the inequitable conduct which it represents".

The oath referred to is found on page 17, Exhibit P 24. It sets forth (in part) that Greiner "does not know and does not believe that the same was ever—in public use or on sale in the United States for more than one year prior to *this* application".

Defendant submits a proper oath was presented to the Patent Office and that at any event it cannot be collaterally attacked in an infringement suit. Citing in support, Wayne Mfg. Co. v. Coffield Motor Washer Co., 8 Cir., 227 F. 987.

Plaintiff also cites certain prior art patents and related art, as shown by Exhibits P 20, P 21, P 22, P 25, P 34, P 35, P 10, P 43 and P 44, P 68 and others. No useful purpose would be served in here discussing these exhibits.

 The Court does not intend to, nor does it here decide, the contentions of the parties as above set out. This for the reason that its conclusion is based on the allegation and assertion of plaintiff, that the "Greiner patent in suit is invalid" because it discloses no "invention". It reveals nothing beyond mere mechanical skill. It covers simply the repositioning or transposition of parts. This "does not constitute 'invention'" Lees-Bradner Co., v. National Tool Co., 6 Cir., 52 F.2d 782. The adaptation of old devices to new purposes, however convenient, is not invention.

In the view of the Court this conclusion is borne out by the whole of the record having reference to Greiner patent in suit, No. 2,359,519. The proof shows that all that Greiner did was to move the final gear drive from the right-hand side to the left-hand side. In this connection, and as bearing generally on the question of invention, the record (Pp 578, 579) shows the following:

"The Court: Will you please state again just what you claim is the invention involved in either claim 1 or claim 3?

"Mr. Des Jardins: The invention is to take the drive gearing for the drive roll from the side of the roller frame that is next to the operator's seat and put it over on the other side of the frame. That is it. I don't think there is any other invention. If that isn't invention, there isn't any invention in it.

"The Court: There is no claim of invention, as I take it, in the fact that they have a driver's seat; they have gears that intermesh.

"Mr. Des Jardins: As far as the gearing, there is no claim of invention.

S18

"The Court: They have taken these devices and put them to some new use by shifting them from one side to the other.

"Mr. Des Jardins: You may say it is a rearrangement of the old parts to give them a new advantage. If that is not invention, then we haven't any. It has got to be that."

The record further shows that defendant's "Expert" Professor Woods, testified (P 623) as follows:

"The Court: Wherein is the difference between those two, except for that moving over? The Witness: The gears are moved over and the difference between Fig. 3 and 5—

"The Court: I am not asking about 3. I am asking about—what is the difference between Fig. 1 and Fig. 3?

"The Witness: The primary difference is the fact that the gearing 14 and 13 in the prior art, in Fig. 1, have been moved from this position adjacent the driver's side to the opposite side, as shown in Figure 5.

"The Court: Now, my question was, except for that what other distinction is there between what is shown in Fig. 1 and what is shown in Fig. 5, except. for that moving over?

"The Witness: As far as I know, that is the primary difference between the two."

In its brief (P 66) defendant speaking of "invention" says: "The invention does not reside in the specific gearing, but in the concept of disposing the gearing connecting the transmission and the drive roll at the side of the frame opposite the side where the operator's seat is located. It was that concept that constituted the invention, and nothing else. * * * Claim 1 is drawn in such terms that it covers both the embodiment of Fig. 3 and that of Fig. 5, while claim 3 is more limited, as to the arrangement of the motor and transmission on the frame and the use of spur gearing and therefore, it covers only the embodiment of Fig. 5".

 The Court is of the opinion and so finds that claims 1 and 3 here in issue of Greiner patent in suit, No. 2,359,519 are invalid for the lack of disclosing therein any "invention".

## V.

### Harrison and Griner Design patent No. Des. 138,539 (Ex. D. 87)

This Design patent in suit comes into this litigation, as heretofore stated, in the following manner: Defendant in its third counter claim alleges its infringement by plaintiff "by applying, without the license of defendant, the design secured by such patent, or a colorable imitation thereof, to articles of manufacture for the purpose of sale, to-wit, to the road rollers illustrated by Defendant's Exhibits A and B" attached to its Answer.

Plaintiff in its reply alleges invalidity and denies infringement.

As to the *validity* of Harrison and Greiner Design patent in suit No. Des. 138,-539.

Plaintiff submits that the patent is invalid for lack of "invention"; that the patentees were not the original and first inventors thereof because long prior to the alleged invention every material and substantial part thereof had been publicly used and had been well known. Plaintiff then sets forth in its reply the alleged prior uses and publications which it states support its allegations and plaintiff avers that all that Harrison and Greiner did was "merely to exercise the expected skill of the worker in the art".

 A Design patent stands on as high a plane as utility patents. Applied Arts Corporation v. Grand Rapids Metalcraft Corporation, 6 Cir., 67 F.2d 428, 429, and "the test of invention in design patents is precisely like that in mechanical, the question being whether it was beyond the powers of the ordinary designer." Dominion Elec. Corp. v. McGraw Elec. Co., D.C., 101 F.Supp. 310, 312.

 The law applicable to design patents does not materially differ from that in cases of mechanical patents. In Smith v. Whitman Saddle Co., 148 U.S. 674, at page 679, 13 S.Ct. 768, at page 770, 37 L. Ed. 606, the Court say: "To entitle a party to the benefit of the act, in either case there must be originality and the exercise of the inventive faculty. In the one there must be novelty and utility; in the other,

originality and beauty. Mere mechanical skill is insufficient. There must be something akin to genius,—an effort of the brain as well as the hand. The adaptation of old devices or forms to new purposes, however convenient, useful, or beautiful they may be in their new role, is not invention."

 The presumption is that this (design) patent in suit is valid and the burden is upon plaintiff .(its assailant) to prove its invalidity. This burden, in the opinion of the Court, plaintiff has sustained.

This Court cannot better express its own views regarding the validity of the Design patent in suit than by here adopting as its own (which it does) the conclusion reached by Judge Kloeb in the Dominion Electric case, supra, where at page 312 of 101 F. Supp., he says: "The Court agrees that plaintiff's (defendant's) design is appealing to the eye * * * but the Court cannot agree, in light of the prior art, that the design is novel and that it produces an original creation that goes beyond mere mechanical skill".

## Collateral Matters

As hereinabove indicated, a question arose early in the trial regarding certain costs and attorney's fees, including allowance of expenses, all of which matters with the consent of counsel, the Court stated (R Pp 8 and 65) "we can take up later." Reference to this has been made by counsel for the respective parties in their briefs— plaintiff at Pp 72 and 73 and defendant, at Pp 57 and 58. Defendant asks "that opportunity be given defendant to produce evidence as to the amount of such reasonable attorneys' fees" and plaintiff "respectfully reserves the right to raise any and all of these matters after a decision is rendered and before the entry of judgment".

In view of the foregoing, plaintiff suggests that "before the entry of the judgment, the parties, if they desired, could bring motions covering the above subjects, as well as file costs to be taxed, if costs are awarded to either party. This is believed to be desirable in accordance with practice outlined in the case of Laufenberg, Inc., v. Goldblatt Bros. Inc., 7 Cir., 187 F.2d 823.

* * *. In this regard it may be pointed out that in the practical application of the rule requiring an appeal to be taken within 30 days from the entry of judgment it has been found that questions of the above character cannot readily be handled after the judgment has been entered because of the shortness of the 30 day period".

The Court has no objection to following the suggestion of plaintiff and unless for good cause shown, it will withhold the judgment entry for such reasonable length of time as to give the parties full opportunity to be heard on the questions as to which the Court reserved its decision.

Upon a consideration of the whole of the record, the briefs and arguments of counsel and the applicable law, the Court has arrived at the following:

## Findings of Fact

1. Plaintiff, the Galion Iron Works & Manufacturing Company, is an Ohio corporation located at Galion, Ohio, and the defendant, The Buffalo-Springfield Roller Company, is an Ohio corporation located at Springfield, Ohio. These corporations are competing manufacturers of road rollers.

2. Plaintiff filed its complaint herein on July 26, 1950, charging defendant with infringement of Keeler patent No. 2,197,395, dated April 16, 1940, owned by plaintiff.

3. In its complaint plaintiff also seeks a declaratory judgment and prays the Court to declare Greiner patents No. 2,359,519, dated October 3, 1944, and No. 2,442,563, dated June 1, 1948, each owned by defendant, to be invalid and not infringed by plaintiff's currently manufactured Tandem Rollers.

4. Defendant by way of counterclaim asserts that Greiner patents No. 2,359,519 and No. 2,442,563, are valid and infringed by plaintiff and further alleges that plaintiff is infringing Harrison et al., Design Patent No. Des. 138,539, dated August 15, 1944, owned by defendant.

### As to Greiner Patent No. 2,442,563

5. At the opening of the trial, defendant conceded that Greiner patent in suit No. 2,442,563 was invalid because of public

use and sale by defendant more than one year prior to the filing date thereof, and consented to entry of a decree of invalidity as to that patent.

As to Keeler Patent No. 2,197,395
(EX. P. 69)

6. Keeler patent in suit No. 2,197,395 contains 26 claims. Of these, only claims 1, 4, 13 and 18 are here in issue. The patent states that one of the objects of the invention is to provide a trench roller "adapted to roll and compact material in a trench along the side of a previously built road". There are two illustrated embodiments of the invention for accomplishing its objects. The first is disclosed particularly in Figs. 1 to 4 inclusive and the second in Figs. 9 to 11 inclusive.

7. The claims in issue of Keeler patent in suit are as follows: "1. In a road roller, the combination with a vehicle frame, of a rock shaft extending transversely of said frame, a lever arm connected to one end of said shaft to swing up or down relatively to said frame when said shaft is rocked, a heavy leveling roller journaled on that end of said shaft remote from said lever arm to occupy a position at one side of said frame, a supporting wheel journaled to the free end of said lever arm to occupy a position at the other side of said frame, and means for rocking said shaft to cause said lever arm to vary the distance of the axis of said supporting wheel from said frame while the axis of rotation of said roller remains fixed relative to said frame, the construction and arrangement being such that the roller always remains in ground engaging position and always serves as a frame supporting roller in co-operation with said wheel". "4. In a road roller, the combination with a vehicle frame, of a rock-shaft extending transversely thereof, a heavy leveling roller on one side of said frame, a supporting wheel at the other side of said frame, means between said shaft and said supporting wheel to effect adjustment in elevation of the adjacent side of said frame upon the rocking of said shaft, and self-contained power-operated mechanism on said frame and connected to said roller to drive the same and thereby propel the machine along the roadway". "13.

In a road roller, the combination with a vehicle frame, of a supporting wheel of relatively small diameter on one side of said frame in position to travel along the road surface, a heavy roller of relatively large diameter on the other side of said frame in position to travel along a lowered road surface while the axis of rotation of such roller remains substantially horizontal, self-contained power-operated apparatus on said frame and connected to said heavy roller to drive the same and thereby propel the machine along the roadway, an operator's station on said frame, steering mechanism connected to said frame and extending to said operator's station for operation therefrom, means for controlling said propelling apparatus from said operator's station, and means operable from said station for bodily adjusting the elevation of said supporting wheel relatively to said frame to enable the axis of the roller to remain horizontal while such roller moves along a relatively low horizontal surface and said supporting wheel moves along a relatively high horizontal surface". "18. In a road roller, the combination with a vehicle frame, of a heavy leveling roller located in its entirety on one side of one end portion of said frame, a ground-engaging wheel at the other side of said end portion of said frame, means for adjusting the elevation of said wheel relative to said frame to maintain the axis of said roller horizontal when the road surface engaged thereby is at a different level form the road surface engaged by said wheel, and a steering roller unit at the other end of said frame in tracking relation to said heavy leveling roller".

8. Plaintiff, in support of its charge or infringement by defendant of Keeler patent in suit, No. 2,197,395, alleges that Claims 13 and 18 thereof are infringed by the Buffalo-Springfield TR–3 trench roller. Plaintiff also alleges Claims 1, 4, 13 and 18 of said patent are infringed by the Buffalo-Springfield TR–3B trench roller.

9. Plaintiff, The Galion Iron Works & Manufacturing Company, manufactured and sold and introduced to the road building industry the first trench roller ever built, which was designed solely as a trench

roller and constructed as a unitary instrumentality for the purpose of rolling and compacting material in a trench alongside a pre-existing hard road, for the purpose of widening the hard road.

10. Numerous devices or attachments had been previously suggested for compacting material in a trench alongside a pre-existing road, including (1) a suggestion by defendant of attaching a roller to a scarifier carried by a three wheel roller (Exhibits D–58 and D–59, A to E) (2) a steel blade ten or twelve feet long, to which a wooden block was bolted, which was pulled along in the trench by a three wheeled roller. It was usually referred to as the "snake"; (3) a tamping device, which was pulled manually and acted like a pile driver; and (4) Enlarging the rear wheels of a conventional three wheel roller to have it work in the trench.

11. After the introduction of the trench roller by plaintiff, in accordance with the teachings of the Keeler patent in suit, No. 2,197,395, defendant built trench rollers which incorporate features claimed in Keeler patent in suit, No. 2,197,395. Defendant conceded during the trial that, if valid, Claims 13 and 18, of Keeler patent in suit No. 2,197,395, were infringed by the Buffalo-Springfield TR–3 trench roller, and that, if valid, Claims 4, 13 and 18, of Keeler patent in suit No. 2,197,395 were infringed by the Buffalo-Springfield TR–3B trench roller. Claim 1 of Keeler patent in suit No. 2,197,395 is also infringed by the Buffalo-Springfield TR–3B trench roller since the two piece shaft 41–44 shown in Fig. 3 of the drawings of Exhibit D–66 constitutes the "rock shaft" defined by Claim 1 and is the equivalent of the "rock shaft" 17 of said Keeler patent.

12. When the "Galion" trench roller was first introduced and made available to the road building industry it presented a combination of elements different from anything previously known, and functioned in a different manner thereby meeting a definite need in the field of road building machinery.

13. Raymond W. Keeler, the inventor, named in Keeler patent in suit No. 2,197,-395 is no longer employed by or connected with plaintiff. He is at present and for the past three years or more, has been employed by one of plaintiff's competitors, The Huber Manufacturing Company of Marion, Ohio. Mr. Keeler testified that he was "not particularly friendly towards" plaintiff company because of some dispute at the time he left it and that he had no "financial interest in the outcome of this lawsuit". (R. P 301)

14. Both Mr. Keeler and Mr. Carl F. Greiner, President of defendant company testified that the art of road rollers, including trench rollers, was in a different field of endeavor as compared with agricultural tractors. (R. Pp 302, 516, 517)

15. Defendant has set up a number of prior art patents (constituting "Book of Prior Art Patents" Exhibit D 71) as alleged anticipations of the Keeler patent in suit. Of these, Defendant's expert, Professor Kenneth B. Woods, specified patent No. 1,128,246 to Hartsough (Ex. D 71E) dated February 9, 1915, as the most pertinent or "the closest approach to either form" of the Keeler patent in suit (R. Pp 209–210) of all of the alleged prior art patents.

16. The Hartsough patent is for a "Tractor". It discloses an agricultural tractor. The specification describes the tractor for use in the "agricultural industry * * * as a substitute for horses to draw plows and various other agricultural implements and vehicles". The patent specification brings out that the tractor is a "small tractor" and is "a comparatively light tractor" and sets forth the disadvantages of heavy tractors which have wheels which "leave large and very solidly packed tracks".

17. There is no evidence to show that tractors were ever built in accordance with the disclosure of the Hartsough patent No. 1,128,246. So far as appears in the present record, it is merely a paper patent which made no significant contribution to the art of agricultural tractors.

18. In the operation of a trench roller it is necessary to reverse its direction of travel repeatedly as it works back and forth over the material being compacted. This requires an efficient and easily operable reversing mechanism for the unit.

822

There is no evidence indicating that the reversing mechanism, shown in Fig. 6 of the Hartsough patent, is operative (Prof. Woods R. Pp 197, 207).

19. There is no disclosure in Hartsough patent Ex. D 71 E, that the traction wheel 2 should be heavy and adequate to effect a satisfactory rolling action on material supplied in a trench, since the patent relies more upon the cleats on the traction wheel 2 to effectuate the tractive effort and since compacting of the earth upon which the traction wheel 2 rotated was an undesirable rather than a desirable characteristic.

20. In a trench roller the heavy roll performs the double function of acting both as a traction roll and as a compacting roll and there must be sufficient pressure on the combined traction and compacting roll to exert a pressure of the order of 300 pounds per lineal inch on the material being compacted. Thus a 10-inch roll must supply approximately 3000 pounds of pressure on the material being compacted (Prof. Woods, R. 208). The actual value of this compression pressure varies in accordance with different State and County specifications. Plaintiff's and defendant's trench rollers employ heavy traction rolls having weights to meet the specifications of the order above mentioned, and this is what is meant in the Keeler patent specification and claims by a "heavy roller" when describing the combined compacting and traction roller.

21. The working tool or implement in the case of the Hartsough patent is a plow or the like, separate from the tractor, intended to be dragged behind the tractor, and to be pulled only in the forward direction. The working tool or implement in the case of the Keeler patent in suit is the heavy roll which forms an integral part of the machine and which compacts the material being rolled as the machine travels forward and backward repeatedly over the ground, thus the Keeler patent in suit constitutes a different combination of elements which perform a different function.

22. The teaching of the Hartsough patent to the effect that the entire tractor should be small and light in weight and that it is undesirable to employ tractors whose wheels leave "very solidly compacted tracks" shows that Keeler's combination of elements including a heavy combined traction and compaction roll is diametrically opposed to the teaching of Hartsough.

23. Hartsough patent No. 1,128,246 does not anticipate claims 1, 4, 13 and 18 of the Keeler patent in suit. Claims 1, 4, 13 and 18 of the Keeler patent in suit define a patentable invention over Hartsough patent No. 1,128,246.

24. Defendant through its expert having asserted Hartsough patent No. 1,128,246 as the most pertinent of all the prior art patents cited, the Court deems it unnecessary to discuss or enter upon a detailed description of the other prior art patents constituting defendant's Exhibit D 71. To some extent this also is the view of defendant itself as appears from the following statement in its brief (P. 20): "It will not be necessary, in this brief, to discuss each of the twelve prior art patents in evidence. We will confine our discussion to the principal ones, which are:

| Hartsough | No. 1,128,246 | Feb. 9, 1915 | Deft's Ex. | D71E |
| Turner | No. 893,763 | July 21, 1908 | " " | D71B |
| Middlebrook | No. 958,519 | May 17, 1910 | " " | D71C |
| Wake | No. 1,293,999 | Feb. 11, 1919 | " " | D71H |
| Melin | No. 1,902,412 | Mar. 21, 1933 | " " | D71L |
| Keeler | No. 1,631,271 | June 7, 1927, | " " | D71K |

Defendant submits that the U. S. patent of Hartsough, No. 1,128,246, for Tractor, patented February 9, 1915, Defendant's Exhibit D 71E, is a complete anticipation of claims 4, 13, and 18 of the Keeler patent in suit".

25. The first trench rollers following the disclosure of the Keeler patent in suit

were manufactured by Keeler's assignee, The Galion Iron Works & Manufacturing Company, plaintiff herein. The first of these machines was produced some time during the summer of 1936.

26. Defendant offered evidence, attempting to establish that Harry A. Sparks, a former employee of the Ohio State Highway Department, now deceased, was the first and original inventor of the machine disclosed and claimed in the Keeler patent.

27. No drawings or written description made by Harry A. Sparks were produced at the trial or appear in the record to show that he conceived the invention of the Keeler patent in suit prior to the summer of 1936 when Keeler's assignee, plaintiff herein, introduced Keeler's invention to the industry.

28. There is no evidence in the record which proves or tends to prove, that Sparks ever built a trench roller or had one built under his direction and supervision.

29. Sparks during his lifetime never claimed that he and not Keeler was the inventor of the "Galion" trench roller.

30. There is no evidence in the record which shows, or tends to show, that Sparks communicated the invention of the Keeler patent in suit to the inventor, Keeler. The inventor, Keeler, denies that the invention of his patent in suit was communicated to him by Sparks.

31. The evidence as disclosed by the record, is wholly insufficient to support any claim that Sparks conceived the invention of the Keeler patent in suit prior to the time that it was conceived by Keeler and produced by his assignee, The Galion Iron Works & Manufacturing Company, plaintiff herein. Keeler, and not Sparks, was the inventor of the machine as disclosed and claimed in Keeler patent in suit No. 2,197,395.

32. The Buffalo-Springfield Roller Company, defendant herein, started manufacturing trench rollers, the first being sold during April of 1939. This trench roller was called the TR–2 and substantially followed the construction of United States patent to Aitken, No. 2,240,236, (assigned to and owned by defendant) dated April 29, 1941, Exhibit P–1. (R. Pp 83,–86).

33. On June 13, 1942, defendant discontinued the manufacture and sale of trench rollers ("during the war") and thereafter again started manufacturing trench rollers on January 26, 1946. (R. Pp 85–86).

34. The TR–3 and TR–3B trench rollers were first constructed sometime about December 14, 1946 ( R. P 87).

35. Plaintiff first notified defendant of its infringement of Keeler patent in suit No. 2,197,395 by letter dated May 6, 1940, Exhibit D–1. At a conference on November 12, 1942, between Mr. Arthur E. Dowell, Jr., attorney for defendant, and Mr. Harker H. Hittson, attorney for plaintiff, Mr. Dowell advised Mr. Hittson that it was his (Mr. Dowell's) understanding that defendant had discontinued the manufacture of trench rollers as covered by Keeler patent in suit, No. 2,197,395, but that if upon investigation he found that a contrary fact existed, he would so notify Mr. Hittson. Such a notification has never been given. As of November 12, 1942, Mr. Dowell's understanding was correct because (as stated in Finding No. 33) defendant had shortly theretofore discontinued the manufacture of trench rollers covered by Keeler patent in suit, No. 2,197,395.

36. Defendant did not advise plaintiff when it again began manufacturing trench rollers on or about December 14, 1946 (Finding No. 34).

37. Defendant is currently manufacturing its TR–3 trench roller as its TR–3B trench roller. There is no difference between its model TR–3 and TR–3B except "engineering refinements". "It is practically the same machine". (R. P 87).

38. When defendant first started the manufacture of its type TR–3B trench rollers sometime on or after December 14, 1946, defendant for the first time produced a trench roller which embodied the invention of Claims 1 and 4 of Keeler patent in suit No. 2,197,395.

39. Defendant was not mislead or harmed in any particular by plaintiff's failure to sooner bring suit on Keeler patent No. 2,197,395.

40. Keeler patent in suit No. 2,197,395 has been recognized in the trade and adjudicated in an uncontested case, in which a default decree and final judgment have been entered against the All Purpose Spreader Company in the case of The Galion Iron Works & Manufacturing Co. v. All Purpose Spreader Co., Civil Action 28020, filed in the United States District Court for the Northern District of Ohio, Eastern Division, wherein Claims 2, 3, 4, 5, 7, 9, 11, 12, 13, 14, 16, 17, 18, 19, 22, 23, 24, 25 and 26 of Keeler patent in suit No. 2,197,395 were held valid and infringed by one or more of the trench rollers manufactured by All Purpose Spreader Company, defendant therein. (Exhibits P–17 and P–18).

### As To Greiner Patent No. 2,359,519 (Exhibit D 75)

41. Greiner patent in suit No. 2,359,519 contains three claims. Of these, only Claims 1 and 3 are here in issue. It is for a "Road Roller", "particularly of the tandem type". It is stated in the patent that "the present application, (November 23, 1942) being a continuation-in-part of my co-pending application Serial No. 364,735, filed November 7, 1940", which "has since become abandoned". It is further stated in the patent that "The principal object of my present invention is to provide a novel arrangement retaining the normal positioning of the operator's seat at the same side of the machine, but disposing the final spur gear or bevel gear drive from the transmission to the said drive roll at the opposite side of the frame, when looking from the driver's seat towards the drive roll, such arrangement permitting unobstructed view by the operator of the point of contact of the drive roll with the ground surface at the near end of the drive roll while undergoing rolling operations adjacent curbs or obstructions disposed at the operator's side of the frame. Thus my novel arrangement retains the normal positioning of the driver's seat while it disposes at the opposite side of the frame the final spur or bevel gear driving of the transmission to the driving roll, and therefore provides a novel arrangement possessing definite advantages over the arrangements of said parts in tandem rollers heretofore used".

42. The claims in issue of Greiner patent in suit No. 2,359,519 are as follows: "1. A road roller of the tandem type including a frame supported by a drive roll carrying a gear, and including a steering roll and including an operator's seat facing the drive roll and disposed adjacent one side of the frame; an engine and transmission unit on the frame intermediate the rolls, said transmission including a drive shaft; and intermeshing gearing connecting the drive shaft and said drive roll gear; said intermeshing gearing being disposed at the opposite side of the frame from the operator's seat thereby permitting unobstructed view from the operator's seat during rolling operations of the near end of the drive roll with respect to curbs or other ground obstructions disposed at the same side of the frame as said seat". "3. A road roller of the tandem type having a frame supported by a driving roll and a steering roll and including an operator's seat facing the drive roll and disposed adjacent one side of the frame; an engine and transmission unit on the frame intermediate the rolls, said transmission having its longitudinal axis aligned with the main shaft of the engine, and said unit being disposed axially of the frame and adjacent the opposite side thereof from the driver's seat, said transmission including a drive shaft disposed transversely of the axis of the frame and extending beyond the said opposite side of the frame, a spur gear rotatable with the driving roll; a second spur gear on the drive shaft and an intermeshing spur gear train connecting said first and second spur gears and disposed adjacent said opposite side of the frame from the driver's seat, said positioning of the drive shaft and intermeshing spur gear train permitting unobstructed view from the operator's seat during rolling operations of the near end of the drive roll with respect to curbs or other ground obstructions disposed at the same side of the frame as said seat".

43. As heretofore stated, Claims 1 and 3 of the Greiner patent in suit No. 2,359,519 are each and both invalid because devoid of "invention". The patent represents no

more than would be expected of a mechanic skilled in the art. The placing of the final drive gearing to the drive roll either on the right-hand side or on the left-hand side does not involve "patentable invention".

44. It has been the practice for many years to supply tandem rollers with a wide seat extending substantially across the rear of the vehicle so that the operator could sit either on the right-hand side of the left-hand side and thus could sit on the side adjacent the final drive gearing to the front roll or on the opposite side. Such machines had been made for many years prior to Greiner's alleged invention in his patent in suit No. 2,359,519 by the Austin-Western Company and are disclosed on page 36 of their Catalog No. 27, Exhibit P–8.

45. Tandem rollers having the feature of the final drive on one side (specifically the left-hand side), and the operator's seat on the opposite side (specifically the right-hand side) were manufactured and sold by the Acme Road Machinery Company many years prior to Greiner's alleged invention in his patent in suit No. 2,359,519 and are disclosed in the photograph, Exhibit P–68 (R. pp 847–852).

46. The Huber Manufacturing Company of Marion, Ohio, built a dual control tandem roller in which there was a wide operator's seat so an operator could sit at one side of the vehicle and control it, with final drive gearing to the front roll on the opposite side thereof. (Stipulation, R. pp 691–692). Photographs, Exhibits P–43 and P–44 show such a Huber roller with the operator sitting on the side opposite the final drive gearing to the front roll, while the operator controls the roller.

As To Harrison et al. Design Patent No. 138,539. (Exhibit No. D87)

47. No notice of infringement of Harrison et al., Design Patent No. 138,539 was given to plaintiff prior to the filing of the suit herein.

48. For reasons heretofore stated, Harrison and Greiner Design patent in suit No. Des. 138,539 is invalid. It is devoid of "invention" and at most represents only the work of one skilled in the art. It does not meet "the test of invention in design patents" that "it was beyond the powers of the ordinary designer".

Conclusions of Law

1. Keeler, in the patent in suit, No. 2,197,395 made an invention over the prior art which invention is disclosed in Claims 1, 4, 13 and 18.

2. Claims 1, 4, 13 and 18 of Keeler patent in suit No. 2,197,395 are valid.

3. Defendant has infringed Claims 13 and 18 of Keeler patent in suit No. 2,197,-395 by the manufacture and sale of its model TR–3 trench roller. (Admitted by defendant, R. P 35, if claims held valid).

4. Defendant has infringed Claims 1, 4, 13 and 18 of Keeler patent in suit No. 2,197,395 by the manufacture and sale of its model TR–3B trench roller. (Admitted by defendant as to Claims 4, 13 and 18, R. 33–34, if claims held valid).

5. All of the claims of Greiner patent in suit, No. 2,442,563 are invalid. (Admitted by defendant, R. 3).

6. Claims 1 and 3 of Greiner patent No. 2,359,519 are invalid.

7. Harrison et al., Design patent No. 138,539 is invalid.

8. Plaintiff is entitled to a decree for an injunction and an accounting for defendant's infringement of Keeler patent in suit, No. 2,197,395.

9. Plaintiff is entitled to a decree declaring Greiner patent No. 2,442,563 invalid and declaring Claims 1 and 3 of Greiner patent No. 2,359,519 invalid, and declaring Harrison et al., design patent No. 138,539 invalid.

10. Judgment shall be entered in favor of plaintiff, with costs.

Counsel may prepare and submit a final judgment and decree in accordance herewith.

Sufficient notice of the date of its submission shall be given to the Court and opposite counsel to comply with the suggested arrangement made under the heading herein of "Collateral Matters".