The **AMALGAMATED DENTAL COM-PANY, Limited and The L. D. Caulk Company, Plaintiffs,**

v.

**LANG DENTAL MFG. CO., Defendant.**
**No. 57 C 1130.**

United States District Court
N. D. Illinois, E. D.
Nov. 2, 1961.

---

Lee J. Gary, Chicago, Ill., Charles M. Thomas, Washington, D. C., for plaintiff.

Frank J. Foley, Chicago, Ill., for defendant.

ROBSON, District Judge.

A separate trial was had on the issue of laches raised by Paragraph XVII of defendant's answer.[1] After a careful study of the evidence and of the controlling precedent, the Court concludes that plaintiffs have not been guilty of laches, and that they took no action calculated to mislead defendant, upon which it relied to its prejudice.

The Wilding patent No. 2,249,694, in suit, concerns a material for taking dental impressions. Judge Barnes (in No. 48 C 505, The Amalgamated Dental Co.,

---

[1]. "Further answering the Complaint, defendant alleges that the plaintiffs' claim, by filing the complaint herein on July 2, 1957, for infringement of the Wilding Patent issued July 15, 1941, is a stale claim and is barred by laches, in that the plaintiffs and defendant for many years prior to the filing of said complaint, have been engaged in direct competition in the manufacture of products which are the subject matter of this suit, and by reason of the long, inexcusable and unreasonable delay of plaintiffs in taking any action against defendant or notifying defendant by charging infringement of plaintiffs' patent, the defendant has been led to believe that plaintiffs did not consider defendant's product to fall within the scope of the patent in suit, and thereby led defendant to continue the manufacture of such compositions as defendant has deemed advisable to manufacture, all in reliance upon plaintiffs' inaction and apparent acquiecence. In the meantime, important witnesses necessary and once available to advise defendant and assist in its defense against said patent have died, and important records necessary to sustain defendant's defense have been lost and destroyed, wherefore plaintiffs cannot in equity and good conscience maintain this action, and are not entitled to the judgment prayed for, or any judgment." There follows a prayer for dismissal of the cause.

Ltd. and The L. D. Caulk Co. v. The William Getz Corporation and Wallace A. Erickson & Co., 90 U.S.P.Q. 339) adjudged the patent valid as a "basic invention of considerable merit."

The evidence discloses the following chronology of events pertinent to the defense of laches:

July 15, 1941    Wilding patent issued.

February 5, 1942   Plaintiff, Amalgamated, gave plaintiff Caulk exclusive license.[2]

April 13, 1948    Getz litigation begun.

June 25, 1951    Getz suit decided.

April 3, 1957    Written notice to defendant of infringement.

July 2, 1957    Instant suit begun.

July 15, 1958    Wilding patent expired.

In 1949, defendant knew of the Getz litigation and had its patent counsel investigate the patent. The president of defendant, Mr. Lang, came with said counsel to this courthouse and looked at the file in the Getz suit, and they concluded in view of the prior art that the Wilding patent was invalid and inoperable, and not capable of infringement by defendant. Mr. Lang was also aware of the settlement of the Getz litigation.

The evidence further disclosed that there was a purchase by plaintiff Caulk from defendant in September, 1950, and later similar orders in October and December of 1950, of a total of some six cans of defendant's elastic impression material of a value of much less than $200. There was some variance and vagueness in the testimony as to the actual amount of material so purchased, and of its cost, but in any event it is too minimal in the overall scheme of plaintiffs' businesses to give rise to the inference that they were, because of those purchases, fully aware of, and acquainted with, defendant's product.

Defendant's testimony disclosed that it did business in 40 of the 48 states, that its sales were not secret; that while it did not advertise in the Journal of American Dental Association, it did advertise about three times a year in the magazine, Oral Hygiene, which is delivered free to every dentist in the United States, as well as schools and other agencies.

Defendant did not mark on its packages the chemical constituents of its product. Plaintiffs' package, however, bore the Wilding patent number.

An analysis of defendant's product as revealed in the Journal of American Dental Association was read by plaintiffs in 1949. Defendant received no warning notice of infringement or any other communications from plaintiff from 1949 to 1957.

The decision in February, 1957, to hold defendant liable, arose from a complaint to plaintiffs, made by a sublicensee, that plaintiffs were not acting diligently in the suppression of infringement of the Wilding patent.

Defendant conceded it took a "calculated risk" in continuing the sale of its product, after learning of the Getz litigation. It also is defendant's contention that the purchase by Caulk Company of its product led defendant to believe plaintiffs were not objecting to defendant's manufacture of the product. An analysis of that product, it states, could very easily have been made to determine whether it contained alginate, calcium and sulphur. Furthermore, an experienced manufacturer would know the product was not plaster of paris, or agaragar because they are not packaged similarly, in that they come in solid or flake form. The directions for mixing, on defendant's package, would reveal to a knowledgeable person that the composition contained alginate.

---

2. It has given two sublicenses, one to Coe Laboratories of Chicago and one to Dental Perfection Company of Glendale, California.

Caulk states it had the competitors' products analyzed and elected to sue Getz Company because it was considered the largest competing infringer. Another competitor whose alleged infringing material was tested, requested and accepted a license under the patent; still another competitor discontinued manufacture.

There was testimony that the Lang product was never mentioned to Caulk by its territorial representatives as being a competing product, and that it tried diligently to keep advised on the activities of competing products throughout the period of 1947 to 1957. It never saw an advertisement by the defendant in the Journal of American Dental Association, nor was any advertisement by defendant brought to its attention.

Plaintiff Caulk's president stated that if he had known of defendant's alleged infringement sooner it would have taken earlier action against it.

Testimony presented by plaintiffs disclosed that Mr. Waples, an official of Caulk, had read the article identifying the Lang Company as a manufacturer in the Journal of the American Dental Association, of October 1, 1946, and August 15, 1947, and that a Doctor Skinner was engaged to test the defendant's product. But plaintiffs disclaim knowledge of defendant's infringement as a result of this

testing inasmuch as Doctor Skinner was a physicist, not a chemist, and the articles in the Journal covered the physical properties, the working properties of the articles, and their performance as impression material, and not as to chemical composition.

Plaintiffs contend that defendant has a heavy burden to sustain the defense of laches [3] and it must show more than the mere passage of time.[4] There must be acts inducive of estoppel leading to measurable and appreciable damage.[5] Furthermore, plaintiffs maintain they are not required to sue more than one infringer at a time.[6] A period paralleling the statute of limitations is applicable in determining laches.[7] A defendant with full notice of possible liability, who intentionally continues manufacture, is precluded from raising the defense of laches.[8] Finally, the defendant did have available to it relief from possibility of liability for infringement, by a determination in a Declaratory Judgment suit.

On the other hand, defendant cites plaintiffs' knowledge as far back as October, 1946, on their reading in the Journal of the American Dental Association of an article identifying defendant as a manufacturer of an alginate composition; that plaintiff Caulk has purchased some of defendant's product in small quanti-

3. Zenith Radio Corp. v. Admiral Corporation, 190 F.Supp. 41 (D.C.W.D.Okl. 1960), affirmed 296 F.2d 708 (10 Cir. 1961); Shaffer, et al., v. Rector Well Equipment Co., Inc., 155 F.2d 344 (5th Cir. 1946); Howard v. Howe, 61 F.2d 577 (7th Cir. 1932); Galion Iron Works & Mfg. Co. v. Buffalo-Springfield Roller Co., 108 F.Supp. 811 (D.C.Ohio 1952).

4. Stearns-Roger Mfg. Co. v. Brown, 114 F. 939 (8th Cir. 1902); Pierce v. International Telephone & Telegraph Corp., 147 F.Supp. 934 (D.C.N.J.1957); Shaffer, et al. v. Rector Well Equipment Co., Inc., supra; Howard v. Howe, supra.

5. Galion Iron Works & Mfg. Co. v. Buffalo-Springfield Roller Co., 108 F.Supp. 811 (D.C.Ohio 1952); Shaffer, et al. v. Rector Well Equipment Co., supra; Zenith Radio Corp. v. Admiral Corporation, supra; Howard v. Howe, supra.

6. Stearns-Roger Mfg. Co. v. Brown, supra; United States Mitis Co. v. Detroit Steel & Spring Co., 122 F. 863 (6th Cir. 1903; Clair, et al. v. Kastar, Inc., 148 F.2d 644 (2nd Cir. 1945); Tompkins v. St. Regis Paper Co., 236 F. 221 (2nd Cir. 1916).

7. Reconstruction Finance Corp. v. Harrisons & Crosfield, Ltd., 204 F.2d 366, 37 A.L.R.2d 1117, (2nd Cir.1953); Hartford-Empire Co. v. Swindell Bros., Inc., 96 F.2d 227 (4th Cir.1938); Gillons et al. v. Shell Co. of California, 86 F.2d 600 (9th Cir.1936).

8. Shaffer et al. v. Rector Well Equipment Co., supra; France Mfg. Co. v. Jefferson Electric Co., 106 F.2d 605 (6th Cir. 1939).

ties practically every year from 1946 to 1957, and defendant has a branch office in the same city as plaintiff Caulk whose ten or twelve retail salesmen are located, ostensibly diligently watching the products of competitors for infringement; that plaintiffs had a chemical analysis of defendant's product in the latter part of 1947; that defendant advertised thrice yearly in a magazine which was distributed free to the dental profession. Defendant further charges that laches [9] of over fourteen years has occurred during which its records have been lost or destroyed, and key personnel have passed away. The doctrine of laches was discussed by Chief Judge Hastings in Boris v. Hamilton Manufacturing Company, 7 Cir., 253 F.2d 526, 529 (1958). He said:

"Mere delay does not constitute laches but when deferment of action to enforce claimed rights is prolonged and inexcusable and operates to defendant's material prejudice, we find laches to be an effectual bar, with the burden of satisfactory explanation devolving upon the plaintiff. Rome Grader & Machinery Corp. v. J. D. Adams Mfg. Co., 7 Cir., 1943, 135 F.2d 617, 619. Laches is an equitable doctrine, not fixed by any unyielding measure, but to be determined in each case under its factual situation, and allowable ' "where the enforcement of the asserted right would work injustice." ' Potash Co. of America v. International Minerals & Chemical Corp., 10 Cir., 1954, 213 F.2d 153, 155 * * *."

The Illinois Supreme Court has recently said in Tarpoff v. Karandjeff, 17 Ill.2d 462, 470, 162 N.E.2d 1, 5:

" 'There is no *laches* where there is no knowledge, and delay will not bar relief where the injured party was ignorant of the fraud.' * * * 'There can be no *laches* where there is no knowledge, and mere delay will not bar relief where the injured party was ignorant of the fraud and filed his bill within a reasonable time after acquiring knowledge of it.' * * * 'Mere delay will not constitute *laches,* but the delay must be such as to work to the disadvantage of the other party. * * *' "

Considering all the elements to be weighed in the determination of the existence of laches, as they are outlined in the above-quoted cases, and the decision in Brennan v. Hawley Products Co., 182 F.2d 945 (7th Cir., 1950), it is the court's conclusion that the evidence presented on the trial of this issue does not support a defense of laches. There was no proof of the plaintiffs' actual knowledge during the long interval that defendant was infringing. The defendant's sales to plaintiffs were insignificant and could not support a finding of knowledge in plaintiffs of defendant's alleged infringement. Plaintiffs' evidence was that it was not aware of defendant's infringement in the interval, but that it thought defendant had gone out of business.

The plaintiffs' analysis of the defendant's product during the interval was not a chemical analysis which would reveal the alleged infringement. The plaintiffs did nothing to mislead defendant into the belief, aside from the passing of time, that they had no intention to relieve defendant of asserted liability for infringement. On the other hand, defendant and its patent counsel were very much aware of plaintiffs' pursuit of infringers in the Getz cause; it was cognizant of the District Court's holding of validity. It knew of that defendant's decision to dismiss its appeal from the finding of validity and

---

9. Woodmanse & Hewitt Manufacturing Co. v. Williams, et al., 68 F. 489 (6th Cir. 1895); Safety Car Heating & Lighting Co. v. Consolidated Car Heating Co., 160 F. 476 (C.C.N.Y.1908); Dwight & Lloyd Sintering Co., Inc. v. Greenawalt Co., 20 F.2d 533 (D.C.N.Y.1927), and 27 F.2d 823 (2nd Cir. 1928); Richardson v. D. M. Osborne & Co., et al., 93 F. 828 (2nd Cir. 1899); Speidel v. Henrici, 120 U.S. 377, 7 S.Ct. 610, 30 L.Ed. 718 (1887); Rome Grader & Machinery Corporation v. J. D. Adams Mfg. Company, 135 F.2d 617 (7th Cir. 1943).

take a license. It concluded to take what was called a "calculated risk" that the patent was invalid. No prejudice has actually been shown to have ensued due to plaintiffs' inaction—no large expenditures or expansion were undertaken in reliance thereon.

The Court concludes that plaintiffs have fulfilled their burden of making a "satisfactory explanation" of the delay. The defendant's prayer of dismissal based on Paragraph XVII of its answer is therefore denied.